PATRIOT CINEMAS, INC.,
Plaintiff, Appellant,

v.

GENERAL CINEMA CORP., et al.,
Defendants, Appellees.

No. 87–1105.

United States Court of Appeals,
First Circuit.

Heard July 29, 1987.
Decided Nov. 24, 1987.

James M. Hughes, with whom Devin & Drohan, P.C., was on brief for plaintiff, appellant.

Dorothy Anderson, Asst. Atty. Gen., Antitrust Div., with whom James M. Shannon, Atty. Gen., Com. of Massachusetts; Stephen E. Merrill, Atty. Gen., Amy L. Ignatius, Sr. Asst. Atty. Gen., Consumer Protection and Antitrust Bureau, State of New Hampshire; James E. O'Neil, Atty. Gen., State of Rhode Island; James E. Tierney, Atty. Gen., and Stephen L. Wessler, Asst. Atty. Gen., Chief, Consumer and Antitrust Div., State of Maine, were on brief for the Com. of Massachusetts, State of New Hampshire, State of Rhode Island, and the State of Maine, amici curiae.

Shepard M. Remis, with whom Mark W. Pearlstein and Goodwin, Procter & Hoar, were on brief for defendants appellees Warner Brothers Distributing Corp., Columbia Pictures Industries, Inc., Paramount Pictures Corp., Twentieth Century Fox Corp., Universal Film Exchanges, Inc., MGM/UA Communications Co., Orion Pictures Corp., and Tri–Star Pictures, Inc.

Michael L. Weiner, with whom Richard G. Reid, Thomas J. Dougherty, Lori Weiner Lander and Skadden, Arps, Slate, Meagher & Flom, were on brief for defendant, appellee Gen. Cinema Corp.

Before CAMPBELL, Chief Judge, TORRUELLA and NOONAN,* Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

This is an appeal from the district court's dismissal without prejudice of an action that was removed from the Massachusetts Superior Court to the United States District Court for the District of Massachusetts.

Plaintiff Patriot Cinemas ("Patriot") owns and operates a chain of seven movie theaters, all within Massachusetts. The defendants are General Cinemas—one of the largest movie theater chains in the United States—and several nationwide distributors of feature films ("distributor defendants"). Patriot claims that the defendants conspired to deny first-run films to one of Patriot's theaters, forcing the theater to close. Consequently, Patriot brought suit in the Massachusetts state court seeking relief under Massachusetts law. Defendants, claiming that the suit contained an artfully pled federal antitrust claim,[1] removed the case to the federal district court. Then, under the strange and now defunct doctrine of "derivative jurisdiction," the defendants asked the federal court to dismiss the suit without prejudice for a lack of subject matter jurisdiction. The district court did so, and Patriot now appeals from the court's order of dismissal and also from the court's refusal to remand certain of Patriot's claims to the state court.

I. PROCEDURAL HISTORY

Defendants' argument that this appeal must be dismissed under the doctrine of judicial estoppel causes us to set forth its procedural history in detail.

Patriot first brought suit in the Massachusetts Superior Court in February 1986.

---

* Of the Ninth Circuit, sitting by designation.

1. Artful pleading is when a plaintiff either "characterize[s] his necessarily federal cause of action solely in state law terms" or "fail[s] to make specific reference ... to a source of federal law that clearly is applicable." 14A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3722, at 243, 276 (1985).

Its complaint contained four counts, all allegedly based on Massachusetts state law: (1) unfair business practices under Mass. Gen.Laws ch. 93A (1987); (2) violation of a recently enacted statute regulating bidding practices in the movie theater industry, *see* Mass.Gen.Laws ch. 93F (1987); (3) violation of the state antitrust statute, *see* Mass. Gen.Laws ch. 93 (1987); and (4) common law tortious interference with contractual relations.

In April 1986, defendants removed the state action to the federal district court. In a joint petition for removal, defendants averred that Patriot's state law claims were "in essence disguised federal antitrust claims." Although the petition referred to all of Patriot's claims, it focused on the state antitrust claim under Mass. Gen.Laws ch. 93.

A month after removal, defendants requested the district court to dismiss the action for lack of subject matter jurisdiction. As, in their view, the complaint had stated a disguised federal antitrust claim, defendants contended that the state court had no jurisdiction over that claim. *See, e.g., Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379–80, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985). Thus, they urged the federal court to dismiss the action without prejudice, under the doctrine of "derivative jurisdiction." According to that doctrine, "a federal district court does not have removal jurisdiction over a claim that the state court lacked subject matter jurisdiction to decide in the first place." *Pueblo International, Inc. v. Reichard De Cardona*, 725 F.2d 823, 828 (1st Cir.1984).

Patriot responded by moving to have its action remanded to the Massachusetts Superior Court. Insisting that its state claims were not artfully pled federal claims, Patriot contended that its state action should never have been removed to a federal court. Defendants filed a joint memorandum of law in opposition to Patriot's motion to remand. In this, defendants emphasized that the count based on Massachusetts state antitrust law was a disguised federal claim. Insofar as the remaining three counts were genuine state claims, defendants stated that the federal court had pendent jurisdiction over them.

On December 1, 1986, the district court granted the defendants' motion to dismiss the removed action without prejudice, and it denied plaintiff's motion to remand to the state court. Underlying the district court's order was the rationale that the state antitrust count was tantamount to a federal antitrust claim.

On December 10, Patriot asked the district court to reconsider its dismissal of the removed action and its refusal to remand. Patriot at this time tendered an amended complaint to the district court which omitted the antitrust count. According to Patriot, its reason for not simply filing this new complaint in the Massachusetts Superior Court was its fear that defendants would immediately remove to the federal court any new state suit based on the remaining three counts. Hence Patriot wanted the district court to remand the truncated complaint to the Massachusetts Superior Court, a procedure ensuring that the amended complaint, at least, remained in the hands of the state court.

Also on December 10, Patriot filed a notice to appeal from the district court's order. This had no effect because the motion for reconsideration was pending. *See* Fed.R.App.P. 4(a)(4).

The distributor defendants and General Cinemas filed memoranda in opposition to Patriot's motion for reconsideration. They did not argue that the remaining three state counts were artfully pled federal claims. Instead, they argued that under the doctrine of derivative jurisdiction, the district court lacked any jurisdiction to remand the state claims.

On December 30, the district court denied Patriot's motion for reconsideration in a one sentence order. The court stated that it adopted the reasoning set forth in the defendants' opposition.

On January 20, 1987, Patriot filed in the district court a second notice of appeal. In the notice, Patriot appealed both from the December 1 order and from the December 30 denial of its motion for reconsideration.

Also on January 20, Patriot filed a fresh action in the Massachusetts Superior Court. The complaint in that case was virtually the same as the amended complaint that it had presented to the district court with Patriot's motion for reconsideration. On March 6, the distributor defendants requested the superior court to stay the new proceeding while this appeal was pending. They argued that allowing the state action to proceed on the three counts while this court debated the fate of the remaining state antitrust count could result in duplicative discovery and a waste of judicial resources if, eventually, we were to vindicate Patriot's right to proceed in a state tribunal with the latter.

Patriot responded to the motion by filing in the superior court a memorandum which has now become the focus of the defendants' estoppel claim. Arguing against any stay of the state proceeding involving the three counts, Patriot represented that it would not pursue a separate claim based on state antitrust law regardless of the outcome of its pending federal appeal.

On March 18, 1987, the Massachusetts Superior Court denied the distributor defendants' motion for a stay. The court gave no reason for its denial.

On April 13, 1987, 14 months after Patriot had filed its original complaint in the Massachusetts state court, the defendants filed their answers in the second state proceeding. The defendants pled multiple defenses, including "the applicable statute of limitations."

On April 14, 1987, the defendants-appellees in this court filed a joint motion to dismiss the instant federal appeal as moot. They supported this motion with a three-step argument. First, Patriot is bound by its representation to the superior court that it would not pursue the state antitrust count. Second, since Patriot is bound by its representation, the dispute over whether the antitrust count should have been remanded to the superior court rather than dismissed has become moot. Third, once that count is dismissed as moot, the entire appeal becomes moot because the pending state suit and the remaining counts in this appeal are identical. Whether the latter are remanded to the state court is of no consequence. Thus, defendants argue, Patriot has no legally cognizable interest in this appeal.

On April 17, 1987, Patriot filed in this court a memorandum in opposition to the motion for dismissal. In the memorandum, Patriot pulled back from its assertion that it would not pursue the state antitrust count. Although it continued to have "no real desire" to do so, it would prosecute the antitrust claim if "developments in the litigation make it appropriate." These "developments" were the possibility that defendants' defenses set forth in their answers would defeat Patriot's other three counts. Patriot also argued that the instant appeal was not moot because the removed federal action in which the appeal was taken had been brought nearly a year earlier than the second state suit. Thus, the two actions are not identical for the purpose of the statute of limitations defense.

Stating that we would prefer to address the mootness issue in the ordinary course of the appeal, we denied the defendants' motion for dismissal. The parties have rebriefed the issues, and the issues are once again before this court.

## II. MOOTNESS

As noted above, defendants' mootness argument has three logical steps: (1) Patriot is bound by its representation that it will not pursue the antitrust count even if that count is remanded to state court; (2) whether the antitrust count is remanded thus becomes moot; and (3) without the antitrust count the entire appeal is moot because Patriot is already pursuing a state action based on the remaining three counts.

### A. Estoppel

Defendants-appellees contend that Patriot is estopped from contradicting its intention, stated in the Massachusetts Superior Court in the course of the second state suit, that it would not pursue the antitrust count regardless of the outcome of this appeal. To reach this result, defendants rely on the doctrine known as

"judicial estoppel" or "preclusion of inconsistent positions." In broad outline, the doctrine precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another. The specific requirements, however, are "rather vague" and vary from state to state and from circuit to circuit. 1A J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ .405[8] (2d ed. 1984). *See generally* Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 Nw.U.L. Rev. 1244 (1986). In fact, some circuits and jurisdictions have never recognized the doctrine. *See, e.g., United States v. 49.01 Acres of Land*, 802 F.2d 387, 390 (10th Cir.1986) ("The Tenth Circuit, however, has rejected the doctrine of judicial estoppel."); *Konstantinidis v. Chen*, 626 F.2d 933 (D.C.Cir.1980) (stating that the District of Columbia has not adopted the doctrine, and finding no tendency in favor of its adoption).

Many federal courts, however, have long employed the doctrine in principle whether or not in name. In *Davis v. Wakelee*, 156 U.S. 680, 15 S.Ct. 555, 39 L.Ed. 578 (1895), the Supreme Court declared,

> It may be laid down as a general proposition that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*Id.* at 689, 15 S.Ct. at 558. This circuit recognizes the doctrine. *See, e.g., Hurd v. DiMento & Sullivan*, 440 F.2d 1322 (1st Cir.), *cert. denied*, 404 U.S. 862, 92 S.Ct. 164, 30 L.Ed.2d 105 (1971); *Smith v. Boston Elevated Railway Co.*, 184 F. 387 (1st Cir.1911).

We agree with Judge Hastie's description of the guiding principle of judicial estoppel in *Scarano v. Central R. Co.*, 203 F.2d 510 (3d Cir.1953). Judicial estoppel should be employed when a litigant is "playing fast and loose with the courts,"

and when "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Id.* at 513. *Accord Allen v. Zurich Insurance Co.*, 667 F.2d 1162 (4th Cir.1982); *Jett v. Zink*, 474 F.2d 149 (5th Cir.), *cert. denied*, 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 104 (1973).

■ The alleged self-contradiction here is Patriot's prior representation in the Massachusetts state court that it would not prosecute the state antitrust count and its subsequent repudiation of that intention. We conclude that Patriot has engaged in the sort of "fast and loose" behavior that warrants application of judicial estoppel.

Patriot's representation not to proceed with the state antitrust count was made after the distributor defendants sought to stay Patriot's second state suit by suggesting the possibility that (1) Patriot might win the instant appeal, and (2) we might then remand all four counts of the original complaint to the superior court. If so, two similar suits would end up in the superior court: (1) the suit here on appeal and (2) the second state suit, identical to (1) in all respects except for the absence of the state antitrust claim.

Defendants thus argued to the superior court judge that state judicial resources would be wasted if the suit before him went immediately to trial without waiting to see whether this court would revive and remand the state antitrust claim. Defendants' argument was not without some plausibility, since the evidence needed to try the pending three-count state suit was much the same as needed if the state antitrust claim were joined.

Patriot could have answered the above arguments in various ways. However, it chose to present the argument that virtually assured a denial of the motion for a stay. Patriot told the superior court that even if it prevailed in its appeal in this court, it would not pursue the state antitrust claim:

> Patriot Cinema has filed the present case which no longer claims any violation of Massachusetts General Law, chapter 93. Consequently, this is a pure and straightforward state case which will remain in

the state courts. Plaintiff is a small company, it claims damages in excess of $700,000.00, and it cannot afford to wait for the defendants and their procedural maneuvers to end. It wishes to go forward with discovery and to conclude this case.

Defendants, however, argue that if the plaintiff's federal appeal is successful ... the federal action will be sent back to the state courts and there might be a duplicate cause of action pending. If that occurs, the two actions would be substantially identical except for the presence of a Massachusetts anti-trust claim in one which is not present in this case. *Plaintiff, however, does not intend to conduct any additional discovery whatsoever on that state anti-trust claim, and it does not intend to proceed on it at all.* If and when the federal case is remanded to the state courts, an appropriate order can be entered at that time consolidating the two cases or making whatever orders are necessary to avoid duplicative discovery. *Plaintiff presently anticipates that it will not proceed with that first case and would then agree to a voluntary dismissal in favor of this present case, which would have proceeded forward at least 12 months.*

(Emphasis added.)

The superior court did deny the motion for a stay. Although the court gave no reasons, it is reasonable to believe that it was influenced by the above representation: Patriot's stated intention to drop the antitrust claim obviated any need the defendants claimed for a stay.

Patriot can be said to have made a bargain with the superior court. It traded its chance for success on the antitrust claim for an increased pace in the proceedings on the remaining three counts. This quid pro quo may well have seemed a good choice for Patriot; as it stated in the above-quoted memorandum to the state judge, it wanted to proceed to judgment as quickly as possible. So far as we know from the record, the state proceedings in the second suit are continuing.

Now, however, Patriot wants to have it the other way: it wants to revive its antitrust claim and have it remanded to the state court while enjoying the benefit of the increased pace of its current state action—a benefit obtained by telling the superior court that it would not proceed with its antitrust claim. This is the sort of self-serving self-contradiction, or "playing fast and loose with the courts," that is barred by the doctrine of judicial estoppel.

Patriot advances two arguments in self-justification. First, it claims that we should not hold it to its representation to the state judge because "very significant developments" have arisen since it wrote the memorandum in opposition to the stay. These "developments" are defenses asserted in the defendants' answer which Patriot implies it did not foresee. Although judicial estoppel may have a good faith exception, *see, e.g., Smith,* 184 F. at 389 (noting that a party may be allowed to adopt inconsistent positions upon a "clear showing of mistake, inadvertency or oversight"), Patriot's asserted excuse is hardly an excuse at all. Implicit in the "bargain" struck with the superior court was that, in surrendering its antitrust claim, Patriot would have a diminished overall chance of recovering against defendants. If we were to allow a litigant to go back on its representation in a situation such as this, the doctrine would be a nullity. In every case a litigant could claim that it somehow miscalculated the chance of success on its remaining claims.

Patriot also argues that it should not be estopped because the defendants have not been prejudiced by its misrepresentation. Little more than a month elapsed between Patriot's expressed lack of interest in the antitrust claim and its subsequent disavowal of that position. It seems unlikely that defendants were directly harmed by the misrepresentation over this short period.

There are two answers to this argument. First, defendants suffered *some* harm from Patriot's assertion: the assertion spelled clear defeat for defendants' stay motion. While defendants probably overstated the harm that would occur to them if a stay were not granted—a state trial was hardly

likely to be scheduled before this court could decide the appeal—denial of the motion spelled the loss of something to which they attached value.

■ Second, harm to an opponent is not an invariable prerequisite to judicial estoppel. *See, e.g., Hurd,* 440 F.2d at 1322 (precluding party from adopting inconsistent positions without finding prejudice to opponent); *Smith,* 184 F. at 387 (same). Unlike equitable estoppel, which requires such prejudice, the function of judicial estoppel is to protect the integrity of the courts. *See Allen,* 667 F.2d at 1166. An effective legal system depends upon norms of candor and responsibility. Patriot's representation caused the superior court to allow judicial proceedings to go forward that it might otherwise have halted. If parties feel free to select contradictory positions before different tribunals to suit their ends, the integrity and efficacy of the courts will suffer.

We hold, therefore, that the doctrine of judicial estoppel bars Patriot from changing the position it previously took in the superior court that it does not intend to proceed on the state antitrust claim "at all."

In connection with this decision, we discuss two other relevant matters. First, we recognize that holding a litigant to his stated intention not to pursue certain claims is different from the "classic" case of judicial estoppel. In the latter, a litigant asserts inconsistent statements of fact or adopts inconsistent positions on combined questions of fact and law. For example, in *Hurd,* we did not allow a litigant to claim both that a law firm did and did not represent her. *See* 440 F.2d at 1323. In *Allen,* the court prevented a party from claiming that he was both an employee and not an employee of the defendant. 667 F.2d at 1167. However, in recent years courts have also applied judicial estoppel to situations such as this, where a party declares an intention not to pursue a claim. *See Matek v. Murat,* 638 F.Supp. 775, 782–83 (C.D.Cal.1986); *Wade v. Woodings-Verona Tool Works, Inc.,* 469 F.Supp. 465 (W.D.Pa. 1979). In *Wade* the plaintiff brought an action for a breach of a trade secrets agreement. The defendant brought a counterclaim attacking the validity of a patent related to the trade secret. Plaintiff then moved for summary judgment on the counterclaim, arguing that he was not claiming nor would he claim patent infringement, and thus that the patent's validity was not in issue. The court granted the motion for summary judgement, but also stated its opinion that any future suit for infringement would be foreclosed by the doctrine of judicial estoppel. 469 F.Supp. at 467.

On reflection, representations such as were made here, that a party will abandon a claim, present a *stronger* argument than do the classic cases for application of the doctrine. An objection to the classic doctrine has been that it reflects the now-abandoned strict rules of pleading. *See Total Petroleum, Inc. v. Davis,* 822 F.2d 734, 737 n. 6 (8th Cir.1987) (noting a "perceived conflict with the rule allowing parties to plead alternative legal theories"). *See also* Fed. R.Civ.P. 8(e)(2) (allowing alternative pleading). Estoppel in the present case, in contrast with, for example, *Allen,* does not clash with the policy which allows pleading in the alternative.

An apt analogy to the present judicial estoppel is to the policy which prohibits litigants from manipulating their pleadings in order to obtain unjust results. This policy is evident in Fed.R.Civ.P. 15(a) and 41(a)(2) which restrict a party's right to amend his pleadings or to dismiss his action without prejudice. Under these rules, a court has the discretion to deny dismissal without prejudice of either a claim or an entire action. *See* 3 *Moore's Federal Practice* ¶ 15.08[4] (listing the reasons for denying leave to amend a complaint); 5 *Moore's Federal Practice* ¶ 41.05[1] (listing reasons for refusal to grant a dismissal without prejudice); *see also* 5 *Moore's Federal Practice* ¶ 41.06–1 (noting that when a party moves to dismiss one of several claims, "the choice of rules is largely a formal matter").

In the present case, the course of proceedings is similar to the situation where a

single suit is brought on several counts, and the plaintiff then asks the court to dismiss one count. In such a case, the court would have the discretion to dismiss the dropped count with prejudice. *See, e.g., Etablissements Neyrpic v. Elmer C. Gardner, Inc.,* 175 F.Supp. 355, 358 (S.D. Tex.1959). *Cf. Reisner v. General Motors Corp.,* 671 F.2d 91, 96, 99 (2d Cir.) (holding that a claim was "withdrawn and waived" when the party stated it was dropping the claim in order to avoid sanctions for failing to answer interrogatories related to the claim), *cert. denied,* 459 U.S. 858, 103 S.Ct. 130, 74 L.Ed.2d 112 (1982).

■ A second point we have considered is whether, when judicial estoppel is being employed, as here, across jurisdictional lines, the proper estoppel law is state or federal.[2] In diversity cases, courts disagree whether the proper estoppel law is state or federal. *Compare Allen v. Zurich Insurance Co.,* 667 F.2d 1162, 1167 n. 4 (holding that federal law applies because judicial estoppel "relates to protection of the integrity of the federal judicial process") *with Konstantinidis v. Chen,* 626 F.2d 933, 937 (holding that *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and *Angel v. Bullington,* 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947), "compel us to look to [state] law"). Since this case is before us on alleged federal question jurisdiction, we are not bound by the strictures of *Erie.* We recognize, however, that regardless of which side prevails in this appeal, the rest of the proceedings will be in the Massachusetts courts.

Still, given all the circumstances, we choose to use federal law. As a practical matter, Massachusetts law affords little guidance, since it remains an open question whether the Massachusetts courts would employ judicial estoppel. *See Brown v. Gerstein,* 17 Mass.App.Ct. 558, 568 n. 19,

460 N.E.2d 1043, 1051 n. 19 (1984). More important, we are not convinced that there is authority sufficient to allow us to adopt the state law of judicial estoppel in the exercise of our federal question jurisdiction.

In conclusion, we think the doctrine is applicable here, and we are of the opinion that Patriot must be held to its prior representations that it will not pursue the antitrust count.

**B.** *Mootness and the Antitrust Count*

Since Patriot is estopped from contradicting its statement that it will not pursue its antitrust count, we are presented with an appeal from the dismissal of a count which the plaintiff no longer wishes to litigate. Such an appeal does not present a live controversy. Thus, this portion of the appeal is moot. *Cf. Consumers Union of U.S., Inc. v. Kissinger,* 506 F.2d 136, 140–41 (D.C.Cir.1974), *cert. denied,* 421 U.S. 1004, 95 S.Ct. 2406, 44 L.Ed.2d 673 (1975); 13A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3533.2 (1984) ("There can be no doubt that an action is mooted if the plaintiff voluntarily withdraws.").

**C.** *Mootness and the Remaining Three Counts*

■ The defendants argue that if Patriot's appeal from the dismissal of the antitrust count is moot, then the appeal with respect to the remaining three counts is also moot. The defendants reason that Patriot currently is pursuing these three counts in state court, so that whether we direct the district court to remand the three counts is of no consequence.

However, the two suits do differ in one respect: this action tolls the statute of limitations 11 months earlier than the action now in state court. This distinction does give Patriot a "legally cognizable in-

---

**2.** We have also considered whether to refuse to entertain the estoppel argument for the following reason: if we find Patriot was entitled to maintain the state antitrust claim and order a remand, the state court could itself decide whether or not to give effect to an estoppel based on Patriot's prior representations to that very court. We reject this argument because we are in as good a position as the state court to deal with the estoppel question. If, as we find, Patriot's conduct does not entitle it to proceed, the courts and the parties gain nothing from waiting a year or so longer to find this out, after the expenditure of more money and effort.

terest in the outcome" of this appeal. *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). Under the applicable statutes of limitations, the 11-month difference may matter. For example, Patriot's fourth count—tortious interference with contractual relations—is presumably governed by the three-year limit in Mass.Gen.Laws ch. 260, § 2A (1987).[3] Patriot's complaint alleges that the anticompetitive conduct began on December 1, 1983. This suit began in February 1986, and thus covers the entire period of the alleged misconduct. In contrast, under the second state suit, Patriot may not pursue a tort cause of action that arose before January 20, 1984. Furthermore, we are unsure of the statute of limitations which is applicable to Patriot's Mass.Gen.Laws ch. 93F count. This provision was

---

**3.** Except as otherwise provided, actions of tort, actions of contract to recover for personal injuries, and actions of replevin, shall be commenced only within three years next after the cause of action accrues.

Mass.Gen.Laws ch. 260, § 2A.

**4.** Because Patriot's appeal on the antitrust count is moot, we lack jurisdiction to consider the substantive issue concerning the well-pleaded complaint rule.

The attorneys general of Massachusetts, Rhode Island, New Hampshire, and Maine have filed an amicus brief disputing the reasoning of the district court in its denial of Patriot's motion to remand. The states contend that if removal of state antitrust claims were to become common practice, state antitrust laws would be rendered virtually meaningless. Under the reasoning of the district court, only a tiny subset of cases—those where the alleged anticompetitive conduct had no effect on interstate commerce—could be tried upon state law in state court. Such a result, we are told, would fly in the face of the long tradition of joint federal-state enforcement of laws which regulate anticompetitive behavior. *See, e.g., Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 495, 69 S.Ct. 684, 687, 93 L.Ed. 834 (1949) ("Agreements and combinations not to sell to or buy goods from particular persons ... are well recognized trade restraint practices which both state and national legislation can and do prohibit."); *Standard Oil Co. v. Tennessee,* 217 U.S. 413, 421–22, 30 S.Ct. 543, 544, 54 L.Ed. 817 (1910) (Holmes, J.); 1 P. Areeda & D. Turner, *Antitrust Law* ¶ 208 (1978).

Patriot filed an action comprised of four state law claims in a state court. Under the well-pleaded complaint rule, which was emphatically reaffirmed by a unanimous court in *Franchise Tax Board v. Construction Laborers Vacation*

---

recently enacted, and has yet to be construed by the Massachusetts courts. Thus, due to the fact that this action tolls the statute of limitations earlier than the second suit, Patriot's appeal from the district court's dismissal of the three remaining state claims and its denial of Patriot's motion to remand is not moot.

## III. DERIVATIVE JURISDICTION

▮ Under the doctrine of derivative jurisdiction, the district court would have been correct to dismiss the antitrust count, if (but only if) as it held, this count were the equivalent to a federal antitrust claim. *See, e.g., General Investment Co. v. Lake Shore & Michigan Southern Railway Co.,* 260 U.S. 261, 288, 43 S.Ct. 106, 117, 67 L.Ed. 244 (1922).[4] The final question be-

---

*Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), a suit with state claims is only removable to federal court if the state law claims "necessarily turn[ ] on some construction of federal law." *Id.* at 9, 103 S.Ct. at 2846. *See also Louisville & Nashville Railroad Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Although the Massachusetts state antitrust law is similar to federal antitrust law, the defendants did not claim that the resolution of this suit turned on federal law. Thus, the amici strenuously contend that under the well-pleaded complaint rule, Patriot's action was improperly removed.

We note that *Franchise Tax Board* only mentions one exception to the well-pleaded complaint rule. This exception is "if a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Id.* 463 U.S. at 24, 103 S.Ct. at 2854 (referring to *Avco Corp. v. Aero Lodge No. 735, International Association of Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), and federal preemption of state labor law); *Hernandez-Agosto v. Romero-Barcelo,* 748 F.2d 1 (1st Cir.1984). As noted above, federal antitrust law has never been held to completely preempt state antitrust law. Thus amici argue that the principal exception to the well-pleaded complaint rule does not apply to Patriot's suit.

In denying Patriot's motion for remand, the court below apparently relied on its belief that the movie theater industry "implicates federal antitrust law," that the suit has a "federal context," and that "the gravamen of Patriot's claim is federal in both cause and effect." Perhaps the court believed that a suit against nationwide movie distributors is uniquely federal, and is thus preempted by either federal antitrust law

fore us is the proper disposition of Patriot's other three claims. The district court dismissed these claims along with the state antitrust count. After considering the logic of the derivative jurisdiction doctrine, the recent amendment of the removal statute, and considerations of fairness, we conclude that the remaining claims should be re-. manded to state court.

First, remand is dictated by the logic of the derivative jurisdiction rule. The rule states that upon removal, the federal court's jurisdiction is derived from that of the state court. Thus, dismissal of a removed claim is warranted when the state court had no jurisdiction over that claim. Accordingly, in keeping with that doctrine (and with its supposition that the state antitrust claim was "really" federal), the district court dismissed the antitrust claim. In addition to the antitrust claim, however, Patriot had three other claims, none of which were or are claimed to be federal. Perhaps the district court dismissed these additional claims because under the derivative jurisdiction rule, it had no *pendent* jurisdiction over these claims. However, the analysis must not stop here. Although lacking in pendent jurisdiction, the federal court did have that type of jurisdiction which allows and even requires a federal court to remand improperly removed state claims. *See, e.g., Franchise Tax Board,* 463 U.S. at 8, 103 S.Ct. at 2845; 1A

*Moore's Federal Practice* ¶ 0.169[1], at 676–78 (2d ed. 1987) (noting that when a state suit is improperly removed, the federal district court should remand, rather than dismiss).

The only rationale under which dismissal would be required is if the antitrust claim somehow "taints" the remaining claims, thereby changing the normal preference for remand. We see no logic to this position, and have declined to follow it in a different context. In *Pueblo International, Inc. v. Reichard De Cardona,* 725 F.2d 823 (1st Cir.1984), we employed the derivative jurisdiction doctrine and ordered dismissal of a removed federal antitrust count. *Id.* at 827. However, we did not then order a dismissal of the remaining counts. Instead, we looked at the suit comprised of the remaining counts, and based our decision on the attributes of these counts.[5] Following that procedure in this case, we find a suit left with three state law counts. Such a suit is improperly removed to the federal court, and remand is in order.

Second, Congress has amended the removal statute, effectively overruling the doctrine of derivative jurisdiction. *See* Judicial Improvements Act of 1985, Pub.L. No. 99–336, § 3(a), 100 Stat. 633, 637 (1986) (codified at 28 U.S.C. § 1441(e)). Although

---

or the commerce clause. Even if this were so (and we express no opinion on the matter), this would appear to provide the defendants merely with a federal *defense*. Under the well-pleaded complaint rule, a federal defense is insufficient to support removal. *Franchise Tax Board,* 463 U.S. at 9–12, 103 S.Ct. at 1846–48; *Mottley,* 211 U.S. at 152, 29 S.Ct. at 43.

The district court also may have relied, as do the defendants, on footnote 2 of *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981). This footnote does have language about claims which are "federal in nature" or which have a "sufficient federal character to support removal." *Id.* Professor Wright calls this footnote "mystifying," C. Wright, *The Law of Federal Courts* § 38, at 212 n. 19 (1983). Whether it was meant to work a revolution in the law of federal removal jurisdiction must, in this circuit, await another case. Even if that were its intent, this radical change may have been overruled sub silentio in *Franchise Tax Board,* which so

strongly reaffirmed the well-pleaded complaint rule. *Franchise Tax Board,* 463 U.S. at 7, 103 S.Ct. at 2845 (noting that the law of removal jurisdiction "has remained basically unchanged for the past century").

The district court also stated that Patriot has failed to allege a claim under state antitrust law. This, however, would appear to be a consideration lacking in relevance to the well-pleaded complaint rule. If the complaint does not state a claim under state antitrust law, then the state court will normally simply dismiss the claim.

As stated, however, we may not properly decide these matters and do not do so. We state merely that the district court's order in respect to the antitrust claim plainly raises difficult and grave questions.

**5.** In *Pueblo,* the truncated suit retained some additional federal counts. We instructed the district court to retain jurisdiction over these counts, and to assert pendent jurisdiction over the state law counts.

the new law does not apply to this case,[6] it does evince Congress's belief that the derivative jurisdiction rule creates wasteful and illogical results. The House Report states that the rule "seems to further no intelligible policy, and it involves a wasteful requirement of dismissal and refiling." H.R.Rep. No. 423, 99th Cong., 1st Sess. 13 (citation omitted), *reprinted in* 1986 U.S. Code Cong. & Admin.News 1545, 1553.

Third, considerations of fairness dictate remand rather than dismissal. Due to the relevant statutes of limitations, Patriot's action may be hindered if the state counts are dismissed rather than remanded. Since the now defunct derivative jurisdiction rule "further[s] no intelligible policy," we decline to interpret that rule in a manner which could produce an unjust result.

## IV. CONCLUSION

For the reasons set forth above, the two appeals and the motion to dismiss are resolved as follows.

1. Patriot appealed from the district court's December 1, 1986 judgment, which denied Patriot's motion to remand and granted the defendants' motion to dismiss without prejudice. Because of the estoppel, Patriot's appeal with respect to the state antitrust count is moot. Therefore, the judgment of the district court with respect to the antitrust count is vacated, and this count is remanded with instructions to dismiss the count as moot. *See Berkshire Cablevision of Rhode Island, Inc. v. Burke*, 773 F.2d 382, 383 (1st Cir. 1985) (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950)). As to the remaining three counts, the judgment of the district court is also vacated. These three counts are remanded to the district court with instructions to grant Patriot's motion to remand to the superior court.

2. Patriot appealed from the district court's December 30, 1986 order denying Patriot's motion for reconsideration. The motion for reconsideration asked the district court to dismiss the antitrust count

and to remand the remaining three counts to the Massachusetts Superior Court. Since our disposition of Patriot's appeal from the December 1 judgment gives Patriot equivalent relief, this appeal is moot.

3. The defendants moved to dismiss this entire appeal as moot, and this court reserved decision. With respect to the antitrust count, the motion to dismiss as moot is granted. With respect to the three remaining counts, the motion is denied.

*So ordered.*

---

**6.** This suit was brought in February 1986. The amendment to the removal statute took effect on June 19, 1986. *See* Judicial Improvements Act § 3(b).