UNITED STATES of America, ex rel. S. PRAWER & COMPANY, Gilbert Prawer and Harvey Prawer, Plaintiffs/Relators,

v.

VERRILL & DANA, P. Benjamin Zuckerman, Anne M. Dufour and Amy Bierbaum, Defendants.

Civil No. 95-321-P-H.

United States District Court, D. Maine.

April 22, 1997.

---

David R. Collins, Asst. U.S. Atty., Office of the U.S. Attorney, Portland, ME, John A. Kolar, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for Plaintiff U.S.

Daniel G. Lilley, Daniel G. Lilley Law Offices; Melinda J. Caterine, Moon, Moss, McGill & Bachelder; Jeffrey Bennett, Herbert H. Bennett & Associates, Portland, ME, for Plaintiff Prawer.

Roger A. Putnam, Verrill & Dana, Portland, ME, Thomas N. O'Connor, Hale & Dorr, Boston, MA, James E. Kaplan, Julianne Cloutier, Jensen, Baird, Gardner & Henry, Portland, ME, for Defendants.

## ORDER ON PENDING MOTIONS

### I. RELATORS' MOTION FOR RECONSIDERATION [1]

HORNBY, Chief Judge.

The relators' motion to reconsider my ruling of June 13, 1996, granting summary judgment to the lawyer defendants on the relators' conspiracy claim is DENIED. I summarily reject the argument that the lawyer defendants' activity in June of 1993 and thereafter could subject them to liability on this claim. The cause of action is against "[a]ny person who ... conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 3729(a)(3). As the relators concede in their motion for reconsideration, the put in question was paid in July of 1992. Any conspiracy to get it allowed or paid, therefore, was achieved as of July 1992, and all of the allegedly suspicious activity cited by the relators occurred after that date. Although

---

1. A motion for reconsideration is not an opportunity to raise new facts or advance new arguments. Thus, I decline to consider any new facts or new arguments raised for the first time in this motion.

there may have been a later cover-up, that is the relators' reverse false claim theory.[2]

 The motion to reconsider my November 8, 1996, ruling ("November Order") granting summary judgment on the reverse false claim is also **DENIED**. I am satisfied that I have correctly interpreted the Assistance Agreement given all of its terms, and that the relators' argument focuses on certain terms to the exclusion of others in order to satisfy the relators' litigating interests thereby distorting the overall agreement.

So far as the scope of the reverse false claim provision, section 3729(a)(7), is concerned, and specifically its use of the terminology "an obligation to pay or transmit money or property to the Government," my discussion of this issue in the November Order shows that the matter is not free from doubt and that the relators' arguments are by no means frivolous. After grappling with the statutory interpretation issue and the various supporting materials such as dictionary definitions and legislative history, however, I am satisfied that the conclusion I reached there is the better one. I make only the following additional observations:

2. The relators now assert that the previous representation of Fleet and Recoil by Zuckerman and Verrill & Dana was part of the conspiracy. That is a new argument not properly made on a motion for reconsideration. *See CMM Cable Rep. Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1527 (1st Cir.1996) ("We are particularly reluctant to diverge from our customary practice given that [plaintiff's] ... arguments challenging the grant of summary judgment came ... only two weeks *after* the district court's summary judgment decision...."). Instead, the relators initially characterized their complaint as follows in response to the motion to dismiss:

 The complaint alleges that the conspirators conspired to *cover up* (in 1993) Fleet's wrongful *"put"* (in 1992), and that their conspiracy is evidenced by the May 1993 Joint Defense Agreement by and between them.... The complaint alleges that *the purposes of the conspiracy* and Joint Defense Agreement were *to cover up* Fleet's fraudulent *"put," to protect Fleet* at the Government's expense, *to ensure the FDIC never discovered* the nonputability of Fleet's *"put,"* and *to prevent Fleet from having to repay the $1.6 million* it had received from the FDIC in July 1992. The complaint alleges an agreement between V & D, Zuckerman, Dufour, Bierbaum, Fleet and Recoil to *conceal*

1. The unbounded scope of the relators' argument is demonstrated in their assertion that even a moral obligation is sufficient for a reverse false claim. *See* Relators' Mot. at 8 n. 8. *See also* November Order at 12.

2. If the False Claims Act treatise is authority, the relators should cite the current version, not the 1994 version. Indeed, since I wrote the November Order relying on the 1995 supplement, the treatise has published a new 1997 supplement that provides even stronger support for the conclusion I reached. *See* John T. Boese, *Civil False Claims and Qui Tam Actions* (Supp. 1997), at 2–38 ("While there are no cases yet discussing this precise issue, the preferred reading of Subsection (a)(7) would be limit the term 'obligation' to existing liabilities, precluding its use for contingent future fines."); *id.* ("Application of [the reverse false claim provision] to future, undetermined fines ... plainly exceeds the scope of the statute.").

3. What was put from Fleet to the FDIC was a "loan," Assistance Agreement § 10.2(b), which includes lines of credit. I continue to reject the argument that each note is put separately.[3] In fact, my Novem-

 *from the FDIC that the Prawer loan* was not putable. The complaint *alleges various acts* by one, several or all of the conspirators to conceal the nonputability of the Prawer Notes. The complaint alleges that *the FDIC suffered monetary damage* as a result of the Defendants' act(s), omission(s) and conduct. The complaint alleges that the Defendants *endorsed the fifteen Prawer promissory notes* (some of which were fully satisfied) *after the Prawer loan was "put"* to the FDIC in 1992 in order to hide the independent "after-the-fact" transfer of three additional notes and nonputability of all the Prawer notes. The Relators' Complaint alleges that these Defendants fraudulently altered and transferred to the FDIC these three *so-called* "Missing Notes," in violation of the Assistance Agreement and False Claims Act.

 The foregoing allegations fairly state a conspiracy claim under Section 3729(a)(3) of the FCA and are sufficient to survive the V & D and Bierbaum Defendants' Motions to Dismiss. *Qui Tam* Pls.'–Relators' Opp. to Def.'s Mot. to Dismiss or for Summ. J. (Docket Item # 28) (filed Feb. 8, 1996) at 9–10 (emphasis in original) (citations and footnotes omitted).

3. The relators now advance a new argument regarding notes renewed on July 3, 1991, as falling outside the credit arrangement. This is a

ber Order twice emphasizes this conclusion. *See* November Order at 2 (altering the summary of material facts to substitute the word "loan" in response to a government objection to my June Order); *id.* at 2 n. 1 (specifically stating that "[a]ll that can be put from Fleet to the FDIC is a 'loan,'" defined in Article I to include lines of credit).

4. The relators substantially overread my decision. It does not limit the term "obligation to pay" to a judgment, but includes settlements, other contract remedies and acknowledgments of indebtedness. *See* November Order at 12–14. Specifically, I have never held that only a successful previous False Claims Act action could satisfy the requirement.

5. The date a statute of limitations begins to run for purposes of a cause of action is totally distinct from the issue whether an obligation to pay exists to support a reverse false claim under subsection (a)(7).

## II. DEFENDANTS' MOTION TO DISMISS [4]

■ The defendants move to dismiss the relators' reverse false claim premised on the alleged cover-up of a C & S obligation under the Maine Bulk Sales Act, 11 M.R.S.A. § 6–105 (1964) (repealed by Laws of 1991, ch. 636, effective June 30, 1992).[5] The alleged cover-up, however, does not create an existing legal obligation sufficient to give rise to reverse false claim liability; rather, if anything it is a "possible indeterminate future … liabilit[y]" to which § 3729(a)(7) does not apply. Boese, at 2–39. Whether an obligation would exist depends on the outcome of litigation pursuing the alleged statutory violation. Consistent with my interpretation of the term "obligation to pay" in my November Order, therefore, I find that no obligation to pay exists within the meaning of § 3729(a)(7) and **GRANT** the motion to dismiss.[6]

## III. CONCLUSION

As a result of my denial of the relators' motion for reconsideration and granting of the defendants' motion to dismiss the reverse false claims regarding the Maine Bulk Sales Act, what remain in this action are the private relators' direct false claims against Ver-

new argument not subject to review on a motion for reconsideration.

4. I reject the argument that I cannot consider this motion because of Fed.R.Civ.P. 12(g). A 12(b)(6) motion for failure to state a claim is *not* covered by 12(g). *See* Fed.R.Civ.P. 12(h)(2). Since this motion can be made any time up to trial, there is every reason under Rule 16 to deal with it now to simplify the case.

5. All defendants join this motion. Although the Verrill & Dana defendants alone originally made this motion, Defendant Bierbaum moved to join, and her request was granted. Relators' footnote stating that Bierbaum has not moved to dismiss this reverse false claim, therefore, is inaccurate. *See* Relators' Mot. at 2 n. 1.

The relators' assertion that an alleged C & S violation of the Uniform Fraudulent Transfers Act ("UFTA"), 14 M.R.S.A. § 3571 *et seq.*, is also the subject of their reverse false claim is unsupported. *See* Relators' Mot. at 3 n. 2. This ground never appears in the Complaint, whereas a Bulk Sales Act violation is expressly alleged. The relators apparently raise this potential obligation for the first time in their motion for reconsideration in the context of describing underlying collections case. In any case, under my analysis of an "obligation to pay," a reverse false claim arising from UFTA allegations would suffer the same fate as one based on potential Bulk Sales Act violations.

6. I need not resolve, therefore, whether the doctrine of judicial estoppel prevents the relators from advancing this reverse false claim. Judicial estoppel seeks "to protect the integrity of the judicial process" by preventing "a litigant [from] 'playing fast and loose with the courts.'" *United States v. Levasseur*, 846 F.2d 786, 792 (1st Cir. 1988) (citing *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987)). To that end, judicial estoppel precludes a party "from asserting a position inconsistent with a position he or she took in an earlier proceeding." *Id.* In earlier litigation where the FDIC sued the Prawers on various notes, the Prawers, through their lawyer, argued that the FDIC's claim against C & S for violation of the Maine Bulk Sales Act, as well as its claim under the UFTA, were both frivolous. (In that litigation the Prawers argued that "the only conceivable basis for having brought C & S into this action was to increase the costs of litigation" and that the FDIC claims there—one of them being the premise for the reverse false claim here—were "a transparent attempt to detract from the deficiencies of its claims," Prawer Def.'s Mot. at 3, *FDIC v. Prawer & Co.*, Civil No. 92–379 (1994), as well as "bad faith litigation practices that the FDIC has engaged in since the commencement of this action." *Id.* at 4.) The Prawers and their lawyer argue that they are not estopped from taking the contrary position in this lawsuit because they now, as *qui tam* plaintiffs, stand in the shoes of the government.

rill & Dana and Attorneys Zuckerman and Dufour for improper billings based upon an alleged conflict of interest (under both sections 3729(a)(1) and (a)(2)). No claims remain against the defendant Bierbaum and she is therefore no longer a party to this lawsuit for purposes of proceedings in the trial court, although she remains a party if and when the private relators appeal these orders as part of an appeal of a final judgment.

The Clerk's Office shall now schedule a Discovery Management Conference so that discovery may proceed on the issues that remain. Counsel for the respective parties shall submit proposed discovery plans after conferring with each other in accordance with the Local Rules.

So Ordered.