Lussier v. Subaru of N.E., et al    CV-99-109-B    06/03/02

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

George Lussier Enterprises, Inc.
et al.

v.                                    Civil No. 99-109-B
                                      Opinion No. 2002 DNH 122
Subaru of New England, Inc.,
et al.

MEMORANDUM AND ORDER

As detailed in several prior orders, this civil action involves, inter alia, civil claims by a number of present and former New England Subaru dealers against defendants Subaru of New England, Inc. ("SNE"), Ernest J. Boch (SNE's president), and Joseph A. Appelbe (SNE's executive vice president and general manager) under the Racketeering Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c). Plaintiffs' RICO theory, in the words of the statute, is that defendants are "person(s) employed by or associated with a[n] enterprise" who have harmed them by "conduct[ing] or participat[ing], directly or indirectly,

in the conduct of . . . [the] enterprise's affairs through a pattern of racketeering activity," id., so as to implement an "option-packing" scheme whereby plaintiffs were coerced "to purchase, on average, $480 in unordered and unwanted accessories on each car allocated and sold by SNE to the dealers," Second Amended Complaint, ¶ 1. The alleged predicate acts of racketeering include extortion, mail fraud, wire fraud, and, in the case of Appelbe, obstruction of justice.

Defendant Appelbe has filed a motion to dismiss the RICO claim against him, which is set forth in Count III of the second amended complaint. The motion advances three arguments: (1) Count III fails to allege facts sufficient to establish that Appelbe is a "person" distinct from the "enterprise" engaged in the "pattern of racketeering activity" at issue, see Cedrick Kushner Promotions, Ltd. v. King, 121 S. Ct. 2087, 2090 (2001) ("We do not quarrel with the basic principle that to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: . . . a 'person' . . . and . . . an 'enterprise' that is not simply the same 'person' referred to by a different name."); (2) plaintiffs have pleaded their RICO

-2-

claims in an impermissibly inconsistent manner by identifying SNE as the RICO "person" in Count I and as the RICO "enterprise" in Count III; and (3) even if Count III states a viable RICO claim, it fails to allege facts sufficient to ground a finding that Appelbe engaged in one of the predicate acts of racketeering alleged in Count III – i.e., that Appelbe obstructed justice. I address each argument in turn.

1. Appelbe's primary argument in favor of dismissal is that the acts of racketeering in which he allegedly engaged were carried out within the scope of his employment at SNE and therefore cannot be regarded as having been committed by a distinct jural "person" within the meaning of the statute. The argument derives from a principle set forth in Bessette v. Avco Financial Servs., Inc., 230 F.3d 439, 449 (1st Cir. 2000), cert. denied, 121 S. Ct. 2016 (2001), and applied in a recent case of mine, White v. Union Leader Corp., Civil No. 00-122-B, 2001 DNH 126 (D.N.H. July 13, 2001). The principle is, in the words of the Bessette panel (also quoted in White), that "employees acting solely in the interest of their employer, carrying on the regular affairs of the corporate enterprise, are not distinct from that

enterprise"[1] and therefore cannot be distinct jural "person[s]"

subject to liability under § 1962(c). 230 F.3d at 9.[2]

_____

[1]This principle does not apply when the enterprise is a criminal association-in-fact. See United States v. Oreto, 37 F.3d 739, 750-51 (1st Cir. 1994) (holding that both the "generals" and the "foot soldiers" of an "organized crime" criminal enterprise are subject to criminal liability under § 1962(c)).

[2]The Seventh Circuit, in adopting a similar principle and construing it to mean that a "person" subject to RICO liability under § 1962(c) for a pattern of racketeering carried out by or through a corporation must exercise some measure of control over the corporation's affairs, has explained its governing principle's rationale as follows:

> It is one thing to allege that criminals are using a corporation to commit crimes, a natural meaning to impress on the statutory language of conducting an enterprise's affairs through a pattern of racketeering activity, and another to assert merely that since the corporation's unlawful scheme must have been hatched by someone connected with the corporation, the scheme (provided it satisfies the statute's pattern requirement) violates RICO. Corporations can only act through natural persons, so the approach that we are criticizing . . . would eliminate any separate function for the "conducts the affairs of through" language of the statute if the perpetrator is a firm. If the scheme is actually hatched or directed by the board of directors or some other controlling group, whether the control is de facto or de jure, it will come close enough to the paradigmatic RICO case to pass muster . . . . The plaintiffs' inability to identify any corporate officers or employees as responsible parties shows that she is trying to truncate the statute in a manner that strikes us as impermissible.

Plaintiffs have two alternative responses. First, they assert that the allegations in the second amended complaint establish that Appelbe had sufficient control over the affairs of SNE to avert dismissal under the Bessette principle (which they apparently construe to mirror the Seventh Circuit's "control" rule, see supra note 2). Second, they contend that, in any event, Cedrick Kushner Promotions rejected the argument that a corporate employee involved in racketeering acts carried on by the corporation must be involved in a "control group" in order to meet the distinctness requirement of § 1962(c). See 121 S. Ct. at 2092 (implying that a lower rung corporate participant under the direction of upper management can be a "person" separate from the § 1962(c) "enterprise") (citing Reves v. Ernst & Young, 507 U.S. 170, 184 (1993)).

Because the parameters of the Bessette principle are less than clear, it is difficult to say whether and to what extent the principle survives Cedrick Kushner Productions. But what is clear in the wake of Cedrick Kushner Productions is that, at the

Emery v. American Gen. Finance, Inc., 134 F.3d 1321, 1324-25 (7th Cir. 1998) (citations omitted).

-5-

very least, a complaint states a viable § 1962(c) claim if it sets forth allegations sufficient to ground a finding that an employee with some measure of control over a corporation's affairs is conducting those affairs through acts made illegal by RICO. See 121 S. Ct. at 93 (disagreeing with the Second Circuit's conclusion that, simply because the president and sole shareholder of a corporation alleged to be a RICO enterprise was acting within the scope of his authority as an employee, he was not a distinct jural "person" within the meaning of § 1962(c)).[3]

Here, the second amended complaint alleges that Appelbe, as executive vice president and general manager of SNE, "has significant input in all management decisions of SNE . . . ." Id. at ¶ 143. The pleading also alleges that "each of the predicate acts . . . were done with the input and approval of Appelbe," id. at ¶ 146; that Appelbe "rendered advice and approved of the option-packing scheme which is the subject of this Complaint," id.; that Appelbe "observed, offered advice, and

_____

[3]Appelbe seeks to distinguish Cedrick Kushner Productions by arguing that its holding applies only to situations where RICO plaintiffs assert that the § 1962(c) "person" is the sole owner of a company alleged to be a § 1962(c) "enterprise." But nothing in the opinion's reasoning supports such a narrow interpretation.

approved of each of Boch's and SNE's subsidiary schemes to weaken dealers," id. ¶ 149; and that Appelbe directly authored and/or approved and ratified the misrepresentations underlying the claimed acts of wire and mail fraud, id. at ¶¶ 151-52. Taking these allegations at face value and drawing all reasonable inferences from them in the light most favorable to plaintiffs, e.g., Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001), a reasonable factfinder could conclude, notwithstanding Boch's undisputed greater authority over the affairs of SNE, that Appelbe exercised sufficient control over SNE's affairs with respect to the alleged predicate acts to be held liable under § 1962(c) as a "person" conducting these "affairs" in a manner made unlawful by RICO.

2. As noted above, Appelbe's alternative argument in favor of dismissal (or at least a directive that plaintiffs replead, see Memorandum of Law in Support of Motion to Dismiss Count III Against Joseph Appelbe, at 14, n.9) rests on the fact that SNE is alleged to be a § 1962(c) "person" in Count I but then is alleged to be a § 1962(c) "enterprise" in Count III. Appelbe contends that pleading the case in this way both violates the rule that

-7-

"the same entity cannot do 'double duty' as . . . the RICO defendant and the RICO enterprise," Libertad v. Welsh, 53 F.3d 428, 442 (1st Cir. 1995), and is precluded by the doctrine of judicial estoppel, see Patriot Cinemas, Inc. v. General Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987).

The second amended complaint can be read to allege that Boch and Appelbe are "persons" conducting the affairs of an "enterprise" – SNE – which itself is a jural "person" conducting the affairs of a larger enterprise with which it is associated – the New England Subaru Dealer Network – in a manner made unlawful by RICO.  The second amended complaint also can be read as pleading two RICO theories in the alternative:  (1) that Boch and/or Appelbe are persons conducting the affairs of SNE in a manner made unlawful by RICO; or (2) that SNE is a jural person conducting the affairs of the New England Subaru Dealer Network in a manner made unlawful by RICO.  Regardless, the principle applied in Libertad is not implicated by these case theories. See 53 F.3d at 442 (reaffirming that a plaintiff may not proceed under § 1962(c) by making allegations which at bottom establish only that a jural person is conducting its own affairs in a

manner made unlawful by RICO).  So too with the doctrine of judicial estoppel; there is nothing ethically untoward about the manner in which plaintiffs have framed their case.  See Patriot Cinemas, 834 F.2d at 212 (judicial estoppel precludes a litigant from "playing fast and loose with the courts" and from using "intentional self-contradiction . . . as a means of obtaining unfair advantage in a forum") (citation and internal quotation marks omitted).  Neither the principle applied in Libertad nor the judicial estoppel doctrine supports the dismissal of Count III.

3.  Because the viability of Count III does not rise or fall on the viability of the alleged predicate act of obstructing justice, I will not at this time expend judicial resources exploring whether plaintiffs' allegations are sufficient to substantiate their claim that Appelbe obstructed justice. Appelbe may renew his challenge to the obstruction-of-justice predicate act by way of a motion in limine and/or if the challenge is material to any subsequent argument that Appelbe is entitled to judgment on the pleadings, summary judgment, or judgment as a matter of law on Count III.

For the reasons stated, the motion to dismiss Count III against Joseph Appelbe [document no. 257] is denied.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge


June 3, 2002

cc:   Richard McNamara, Esq.
      Ronald Snow, Esq.
      Michael Harvell, Esq.
      Howard Cooper, Esq.
      William Kershaw, Esq.
      Steven W. Kasten, Esq.