**Alternative Systems v. Synopsys**      **CV-00-546-B    02/19/03**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>**Alternative Systems
Concept, Inc.**</u>

   v.

<u>**Synopsys, Inc.**</u>

Civil No. 00-546-B
Opinion No. 2003 DNH 026


<u>MEMORANDUM AND ORDER</u>


Alternative Systems Concepts, Inc. ("ASC") has sued Synopsys, Inc. for breach of contract as the successor to Languages for Design Automation, Inc. ("LEDA"). ASC originally claimed that LEDA breached a commitment it made in a Letter of Understanding ("LOU") to engage in a good faith effort to negotiate a permanent marketing agreement with ASC. Faced with overwhelming evidence that LEDA fulfilled its obligation under the LOU, ASC has abandoned this argument. It now contends that Synopsys is liable because LEDA breached a separate oral agreement to make the LOU permanent. As I explain in greater

detail below, the doctrine of judicial estoppel bars ASC from making this argument because ASC disavowed any such basis for its claim in an earlier pleading.  Accordingly, I grant Synopsys's motion for summary judgment challenging this claim.

## I.  BACKGROUND

### A.  Facts

ASC and LEDA entered into the LOU on March 29, 1999.  The LOU made ASC LEDA's exclusive marketing agent in the United States for its "Proton" product line from April 1, 1999 until September 30, 1999.

The LOU provides that:

> [a]fter the expiration of this LOU, both companies might enter into a formal long-term agreement to appoint ASC as an agent to market and sell PROTON Products in the [United States].

LOU at ¶ 2.  It also states that "LEDA and ASC will negotiate in good faith a permanent agreement based on experiences during the term of this LOU," but recognizes that "neither LEDA nor ASC has any obligation in entering such a permanent agreement."  LOU at ¶ 19.

The parties exchanged a series of e-mails and held several meetings to discuss the possibility of extending the LOU. On September 1, 1999, representatives of ASC and LEDA met in Grenoble, France to discuss the issue. At the meeting, Serge Maginot, LEDA's Managing Director, assured Alexander Zamfirescu, ASC's Vice President of Engineering, that "all was satisfactory in regard to a permanent agreement." Aff. of Alexander Zamfirescu at ¶ 13. On September 20, 1999, LEDA agreed by e-mail to extend the territorial limits of the LOU to include Canada. See id. at ¶ 14. On October 5, 1999, the parties met in Orlando, Florida, and engaged in further discussions. While in Orlando, Maginot told Zamfirescu and Jake Karrfalt, ASC's President, that it would not be necessary to memorialize the permanent agreement until LEDA released a new version of its product in the United States and Canada, which was expected to occur in December or January. See id. at ¶ 15. By that point, Karrfalt believed both that LEDA had agreed to permanently extend the LOU and that the agreement would be reduced to writing when LEDA released the new version of its product. Dep. of Jake Karrfalt at 41-44. Maginot claims, in contrast, that LEDA never agreed to make the LOU

permanent.  <u>See</u> Dep. of Maginot at 81-82.  It is undisputed that the parties never executed a written agreement to permanently extend the LOU.

ASC continued to serve as ASC's marketing agent until Synopsys acquired LEDA in January 2000.  Thereafter, Synopsys notified ASC that it would no longer extend the LOU.

## B.   **Procedural History**

ASC's First Amended Complaint charges that Synopsys is liable for breach of contract because its predecessor, LEDA, "breached its agreement to negotiate a permanent agreement in good faith and to honor the Canadian distributorship."  First Amended Compl. at ¶ 19.  Synopsys later moved to dismiss ASC's contract claim on the ground that it was barred by the statute of frauds.  <u>See</u> Def's Motion to Dismiss First Amended Complaint at 9 (Doc. No. 14).  Synopsys based its argument on the assumption that ASC was claiming that Synopsys had breached an oral agreement between the parties to make the LOU permanent. <u>See</u> <u>id.</u>  In response, ASC stated "[p]laintiff is not claiming that defendants breached an agreement to enter into a long-term contract.  <u>Plaintiff's contract claim is that LEDA breached its</u>

agreement to negotiate in good faith . . . ."  Plf's Mem. Supp. Obj. to Mot. to Dismiss First Amend. Compl. at 4-5 (Doc. No. 15) (emphasis added).  Because the parties to the LOU could complete this negotiation process within a year, ASC reasoned, its contract claim was covered by a recognized exception to the statute of frauds.  I relied on this argument in rejecting Synopsys's motion to dismiss the contract claim.  See August Order at 5 n.2.

## II.  **STANDARD OF REVIEW**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A material fact is one that affects the outcome of the suit.  See id. at 248.

In ruling on a motion for summary judgment, I must construe the evidence in the light most favorable to the non-movant. See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001). The party moving for summary judgment, however, "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson, 477 U.S. at 249). Neither conclusory allegations, improbable inferences, or unsupported speculation are sufficient to defeat summary judgment. See Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002).

### III. <u>DISCUSSION</u>

Synopsys has moved for summary judgment with respect to ASC's breach of contract claim on the ground that the undisputed evidence demonstrates that it fulfilled its contractual obligation to ASC to make a good faith effort to negotiate a permanent extension of the LOU.

ASC does not argue that Synopsys's motion should be denied because a genuine factual dispute exists as to whether LEDA negotiated with ASC in good faith. Instead, it bases its opposition solely on its new argument that Synopsys is liable because it breached an alleged oral agreement to make the LOU permanent. I reject this effort based on the doctrine of judicial estoppel.

The First Circuit has held that judicial estoppel "should be employed when a litigant is playing fast and loose with the courts and when intentional self-contradiction is being used as a means of obtaining an unfair advantage." <u>Franco v. Selective Ins. Co.</u>, 184 F.3d 4, 9 (1st Cir. 1999) (quoting <u>Patriot Cinemas, Inc. v. Gen'l Cinema Corp.</u>, 834 F.2d 208, 212 (1st Cir. 1987)) (internal quotations omitted). "Unfair advantage

generally requires that a party have succeeded previously with a position directly inconsistent with the one it currently espouses." Id. (quoting Lydon v. Boston Sand & Gravel Co., 175 F.3d 6, 12-13 (1st Cir. 1999)) (internal quotations omitted).

It is beyond reasonable dispute in this case that ASC obtained an unfair advantage by contending in opposition to Synopsys's motion to dismiss that its breach of contract claim was premised on an alleged breach of the LOU, rather than a subsequent oral agreement to make the LOU permanent. Had it not taken this position, I would have dismissed its contract claim on the basis of the statute of frauds because a permanent marketing agreement, such as the one ASC now contends existed, is not capable of being performed within a year and the statute of frauds renders such contracts unenforceable. It is equally incontestable that Synopsys was prejudiced by ASC's actions, not only because I otherwise would have dismissed its breach of contract claim earlier, but also because Synopsys has since devoted all of its efforts to defending a claim that ASC has abandoned. This is precisely the case for which the doctrine of judicial estoppel was created.

## IV.  CONCLUSION

For the foregoing reasons, I grant Synopsys's motion for summary judgment (Doc. No. 68) and deny ASC's motion for partial summary judgment (Doc. No. 63).  The clerk shall enter judgment for the defendant.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

February 19, 2003

cc: John P. Griffith, Esq.
    Chris Scott Graham, Esq.
    Irvin D. Gordon, Esq.