STEVENS TECHNICAL SERVICES, INC.; Stevens Technical Services (Panama) S.A., Plaintiffs–Appellees,

v.

SS BROOKLYN, her engines, tackle, gear and furnishing, etc.; Wilmington Trust Company, Defendants–Appellants.

STEVENS TECHNICAL SERVICES (PANAMA) S.A.; Stevens Technical Services, Inc., a corporation, Plaintiffs–Appellants,

v.

SS BROOKLYN, her engines, tackle, gear and furnishings, etc.; Wilmington Trust Company, Defendants–Appellees.

Nos. 87–4454, 87–4461.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 1989.

Decided Sept. 12, 1989.

---

Guy C. Stephenson, Schwabe, Williamson & Wyatt, Portland, Or., for defendants-appellants/cross-appellees.

Donald F. Mooney, New York City, for plaintiffs-appellees/cross-appellants.

Before CANBY, THOMPSON and LEAVY, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

## INTRODUCTION

Stevens Technical Services, Inc. and Stevens Technical Services (Panama) S.A. ("Stevens") filed suit to enforce a maritime lien against the SS Brooklyn and recover the amount of the lien from the vessel's owner, Wilmington Trust Company ("Wilmington"). Following trial by a magistrate pursuant to 28 U.S.C. § 636(c), judgment

was entered in favor of Stevens for the full amount of the lien ($67,524.42); however, Stevens's request for prejudgment interest was denied. The SS Brooklyn and Wilmington appeal. They contend the magistrate erred in determining (1) that invoices totaling $55,676.42 had not been paid; (2) that Stevens had not waived its lien; (3) that Stevens was not estopped to deny payment of invoices in the amount of $55,676.42; (4) that the claims of Stevens were not barred by the doctrine of laches; and (5) that judgment could be entered against Wilmington *in personam*. Stevens cross-appeals the magistrate's denial of prejudgment interest. We have jurisdiction under 28 U.S.C. §§ 636(c)(3) and 1291. We affirm the judgment for the full amount of the lien. We reverse the denial of prejudgment interest.

## FACTS

Stevens performed repair work on the SS Brooklyn on four separate occasions from January 1 through January 9, 1980. Purchase orders for these repairs were issued by Cove Shipping, Inc. Following the completion of each requested repair job, Stevens submitted an invoice. Each invoice stated the repair work had been "Sold to T/T Brooklyn & Owners." The total cost of all repair work was $67,524.42.

During 1979 and 1980, Stevens also performed repair work on the SS Brooklyn's sister ship, the SS Bay Ridge. Stevens submitted its first invoice for work performed on both of these vessels to Cove Shipping, Inc. in February 1980. However, all future invoices were sent to Ocean Shipping and Traveling Corporation at the express direction of Cove Shipping, Inc. Another company, Bay Tankers, then reviewed the invoices for both the SS Brooklyn and the SS Bay Ridge.

In 1980, Stevens received six checks from Bay Tankers totaling approximately $220,000.00. The checks did not indicate that they were in payment of any specific invoice or for any particular vessel. Stevens understood that these payments were made generally on account for several vessels for which Bay Tankers was acting, including the SS Brooklyn and the SS Bay Ridge.[1] Stevens applied $55,676.42 of the amount paid toward the invoices on the SS Brooklyn account.

A dispute subsequently arose between the owners of the SS Bay Ridge and Stevens concerning the application of the $55,676.42 to the SS Brooklyn account. The SS Bay Ridge owners claimed they were entitled to this credit. Stevens sued the SS Bay Ridge in the United States District Court for the Southern District of New York to collect what it claimed the SS Bay Ridge owed. Following trial, the district court in New York determined that the $55,676.42 should have been applied to the SS Bay Ridge account. *Stevens Technical Services, Inc. v. TT Bay Ridge*, 81 Civ. 0305 KTD (S.D.N.Y.1983).

The district court in New York entered its judgment in the *Bay Ridge* litigation in September 1983. In December 1983, Stevens filed its lien against the SS Brooklyn in the amount of $67,524.42 (the amount of the SS Brooklyn's account without the credit which the district court had decided belonged to the SS Bay Ridge). After filing its lien, Stevens attempted to arrest the SS Brooklyn and eventually succeeded in doing so. Stevens then brought the present action in February 1986 to foreclose its maritime lien against the SS Brooklyn *in rem*, and to recover the amount of the lien against Wilmington *in personam*.

## ANALYSIS

A. Payment, Waiver, Laches and Estoppel

1. *Payment*

■ The appellants SS Brooklyn and Wilmington contend that Stevens is stuck

---

1. Appellants and cross-appellants stipulated to the following facts:

 During 1980 plaintiffs received six checks in round figures from Bay Tankers, Inc. totaling $220,000. Plaintiffs understood that the payments were made generally on account of several vessels for which Bay Tankers were acting, including the SS Bay Ridge and the SS Brooklyn, and understood certain payments were *not* designated to be applied to particular vessels.

 The checks did *not* specify that they were in payment for any particular vessel or invoice. (emphasis added).

with its initial allocation of $55,676.92 which it made to the SS Brooklyn's account, and that notwithstanding the decision of the district court in the *Bay Ridge* litigation in New York, Stevens cannot deprive the SS Brooklyn or Wilmington of this credit simply by reallocating it away from the SS Brooklyn account to the SS Bay Ridge account. In support of this argument, appellants rely on *The Sophia Johnson*, 237 F. 406 (W.D.Wash.1916).

*The Sophia Johnson* is inapposite. There, a creditor who had the right to decide how to apply payments on a general account first credited the payments against charges for which a lien could be filed. Then, when various other parties claimed liens against the vessel and it looked as if only lienholders would get paid, the creditor switched its allocation of the payments to non-lienable charges, leaving it with unpaid charges for which a lien could be claimed. The court determined that the creditor had acted fraudulently in switching the payments to non-lienable items so as to improve its position in the litigation, and ordered the payments applied to the lienable items as originally credited. The court stated a creditor could not switch its allocation of payments in such a way as to adversely affect the equities of third parties. In the present case, no contention is made that the equity of any third party will be affected by the reallocation of the payments. Moreover, it was the decision of the district court in New York which caused the reallocation of the payments, not the voluntary act of the creditor.

The present case more closely resembles *Roxbury v. Lotta*, 65 F. 319 (S.D.N.Y. 1894). There, the court determined that an agent for several vessels had diverted one vessel's payment to another. The creditor had innocently applied the payment according to the agent's improper instructions. The court restored the parties to their proper debtor-creditor positions by reallocating the payment as it should have been allocated in the first place.

Here, as in *Lotta*, the reallocation of payments by Stevens from the SS Brooklyn account to the SS Bay Ridge account, pursuant to the New York district court's decision in the *Bay Ridge* litigation, simply placed the parties in the positions in which they should have been in the first place. We conclude the magistrate did not err in determining that as a result of the reallocation, Stevens retained its maritime lien against the SS Brooklyn, and its *in personam* claim against Wilmington, undiminished by the reallocated $55,676.42.

**2. Waiver**

■ A maritime lien may be waived by "agreement or otherwise." *W.A. Marshall & Co., Inc. v. SS "President Arthur"*, 279 U.S. 564, 49 S.Ct. 420, 73 L.Ed. 846 (1929); 46 U.S.C. § 974. However, a presumption exists that any service supplied to the vessel was furnished on the credit of the vessel. The party attacking the lien has the burden of overcoming the presumption by showing that the party rendering this service relied solely on personal credit and that the supplier intended to forego the lien. *W.A. Marshall & Co.*, 279 U.S. at 568, 49 S.Ct. at 421; *Farrell Ocean Services, Inc. v. United States*, 681 F.2d 91, 93 (1st Cir.1982); *Point Landing, Inc. v. Alabama Dry Dock and Shipbuilding Co.*, 261 F.2d 861, 867 (5th Cir.1958).

While Stevens was pursuing the *Bay Ridge* litigation in New York, it did nothing to pursue its lien claim against the SS Brooklyn, nor did it demand payment from Wilmington. The appellants argue that by this conduct, Stevens waived its maritime lien. The magistrate concluded there was no inconsistency in Stevens trying to collect what it claimed the SS Bay Ridge owed before seeking to foreclose its lien on the SS Brooklyn. We agree. As the magistrate stated, "[i]t would make no sense to require a lien claimant to foreclose its lien before trying to collect payment through customary means. The argument that Stevens waived its lien by first trying to collect payment without foreclosing its lien is without merit." *Stevens Technical Services, Inc. v. SS Brooklyn*, No. CV-86-188-JU (D.Ore.), Magistrate's Opinion dtd. Nov. 27, 1987, p. 7.

The appellants also argue that Stevens's failure to commence enforcement of its lien against the SS Brooklyn, or to demand payment from Wilmington until February 1986, evidences Stevens's intent to waive its lien rights. We disagree. As the magistrate noted, this conduct was as consistent with reliance on the lien for payment as it was with an intention to waive the lien.

We conclude that the magistrate did not err in finding that Stevens had not waived its maritime lien against the SS Brooklyn. *See Farrell Ocean Services, Inc.*, 681 F.2d at 93 (district court's findings on issue of waiver reviewable for clear error).

### 3. *Laches*

Appellants contend that Stevens's suit is barred by the doctrine of laches. They argue that because Stevens delayed some six years after the repairs had been completed before bringing suit to foreclose the lien, and collect from Wilmington, appellants suffered prejudice. They contend that this prejudice was the loss of their rights to recover on a theory of indemnification from the bare boat charterer of the SS Brooklyn, an entity known as "East River," and to recover on the guaranty of East River's performance by a separate entity known as "Sea Train." The appellants assert that by the time Stevens got around to filing its suit to foreclose its maritime lien, and to recover on its claim against Wilmington, both East River and Sea Train were hopelessly insolvent.

 Laches requires the presence of both inexcusable delay and prejudice. *Brown v. Continental Can Co.*, 765 F.2d 810, 814 (9th Cir.1985); *Akers v. State Marine Lines, Inc., et al.*, 344 F.2d 217, 219 (5th Cir.1965). The magistrate found that East River, the charterer, had been unable to meet its debts as early as 1980, and that Sea Train, East River's guarantor, had filed bankruptcy in 1981. The magistrate further found that the appellants were aware of these circumstances, and that their alleged rights of indemnification and guarantee were substantially worthless as early as these respective dates. Thus, neither the SS Brooklyn nor Wilmington was

prejudiced by Stevens's delay in bringing the present action. The magistrate did not err in concluding that the defense of laches was inapplicable.

### 4. *Estoppel*

' Appellants argue that Stevens should be "judicially estopped" from asserting that the invoices totaling $55,676.42 had not been paid. Judicial estoppel precludes a party from asserting a position in a current legal proceeding which is contrary to the position that party previously asserted in another. *Garcia v. Andrus*, 692 F.2d 89, 94 (9th Cir.1982); *see also* 1A J. Moore, J. Lucas and T. Currier, *Moore's Federal Practice* § .405(8) (2d ed. 1984); *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987). "To the extent that prior sworn statements are involved, the doctrine upholds the 'public policy which exalts the sanctity of the oath. The object is to safeguard the administration of justice by placing restraint upon the tendency to reckless and false swearing and thereby preserve the public confidence in the purity and efficiency of judicial proceedings.' " *Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C.Cir.1980) (quoting *Melton v. Anderson*, 32 Tenn. App. 335, 339, 222 S.W.2d 666, 669 (Ct.App. 1948)). The doctrine is also invoked to prevent parties from playing fast and loose with the courts. *Scarano v. Central R.R.*, 203 F.2d 510, 513 (3d Cir.1953); *Patriot Cinemas, Inc.*, 834 F.2d at 212 (1st Cir. 1987).

Most circuits have refused to apply the doctrine of judicial estoppel unless the inconsistent assertion in the subsequent litigation was adopted in some manner by the court in the prior litigation. *See, e.g., Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1167 (4th Cir.1981); *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir.1982); *United States v. 49.01 Acres of Land*, 802 F.2d 387, 390 (10th Cir.1986). The purpose for this majority view is that absent judicial acceptance of the prior inconsistent position, no risk of inconsistent results exists. Thus, the integrity of the judicial process is unaffected and the perception and/or dan-

ger that either the first or subsequent court was misled is not present. *Edwards,* 690 F.2d at 599; *Konstantinidis,* 626 F.2d at 939.

Under the majority view, because Stevens was unsuccessful in the *Bay Ridge* litigation in the district court in New York in sustaining its position against the SS Bay Ridge, the magistrate correctly concluded that Stevens should not be estopped from asserting that the account of the SS Brooklyn remained unpaid in the present litigation to the extent of the misapplied $55,676.42 credit.

Under the minority view, judicial estoppel has been applied notwithstanding that a party was not successful in asserting its position in the prior judicial proceeding, if the court determines that the alleged offending party engaged in "fast and loose" behavior which undermined the integrity of the court. *See, e.g., Patriot Cinemas, Inc.,* 834 F.2d at 212. In the present case, Stevens's actions do not reach the level of "fast and loose" conduct illustrated by *Patriot Cinemas.* Stevens asserted what it believed in good faith to be its legitimate rights in the *Bay Ridge* action. The district court in that action simply resolved the dispute against the position which Stevens asserted; the court rendered a judicial determination as to how the $55,676.42 should be allocated and Stevens abided by that decision in filing the present action.

This circuit has acknowledged that the doctrine of judicial estoppel acts to bar inconsistent positions but has not stated the requirements for the application of the doctrine. *State of Arizona v. Shamrock Foods Co.,* 729 F.2d 1208, 1215 (9th Cir. 1984), *cert. denied,* 469 U.S. 1197, 105 S.Ct. 980, 83 L.Ed.2d 982 (1985). Here, we need not adopt either the majority or the minority position; under either view, estoppel does not apply in this case.

**B. In Personam Judgment Against Wilmington**

Wilmington asserts that because there was no evidence that it ordered the services in question, no basis exists for the district court's finding of *in personam* liability against it. We reject this argument.

The magistrate did not make a specific finding on which the court based its *in personam* judgment against Wilmington. Nonetheless, we will uphold this result if there is a reasonable view of the evidence to support the magistrate's action. *See United States v. Most,* 789 F.2d 1411, 1417 (9th Cir.1986). An independent review of the facts reveals that there is a reasonable view of the evidence which supports the *in personam* judgment against Wilmington.

When a maritime lien attaches, the supplier not only may pursue an *in rem* action against the vessel, but also has the option of bringing an *in personam* action against any party who is directly liable in contract. *Dowell Div. of Dow Chemical v. Franconia Sea Transport, Ltd.,* 504 F.Supp. 579, 581 (S.D.N.Y.1980), *aff'd* 659 F.2d 1058, *cert. denied,* 454 U.S. 941, 102 S.Ct. 478, 70 L.Ed.2d 249 (1981). A shipowner may be such a party. *Id.*

Federal maritime law embraces the principles of the law of agency. *Kirno Hill Corp. v. Holt,* 618 F.2d 982, 985 (2d Cir. 1980); *Port Ship Serv., Inc. v. International Ship Management,* 800 F.2d 1418, 1420 (5th Cir.1986). The Restatement (Second) of Agency has been adopted in maritime law as an accurate statement of applicable general agency principles. *See, e.g., Port Ship Service, Inc.,* 800 F.2d at 1420. Under the Restatement, unless otherwise agreed to between the parties, a disclosed or partially disclosed principal is a party to a contract if made within the agent's authority. Restatement (Second) of Agency § 147. "If the contracting party has notice that the agent is acting for a principal but has no notice of the principal's identity, the principal is partially disclosed." *Id.* at section 4(2). We must determine whether Wilmington was a partially disclosed principal based upon the knowledge of Stevens at the time services were ordered. *Id.* at section 4, comment c.

In this case, the purchase orders from Cove Shipping, Inc. state it was acting "as agent only for the owners." This is sufficient to establish that there was a principal

owner of the vessel for whom the agent was acting. Wilmington was the owner. It was a partially disclosed principal and it is liable on the contract. Restatement (Second) of Agency § 147.

## C. Prejudgment Interest

Stevens cross-appeals the magistrate's denial of prejudgment interest. We review the magistrate's denial of prejudgment interest for an abuse of discretion. *Columbia Brick Works, Inc. v. Royal Ins. Co.*, 768 F.2d 1066, 1068 (9th Cir.1985).

In admiralty cases, "the district court has discretion to award prejudgment interest to accomplish the just restitution of the injured parties." *Id.* "While the award of prejudgment interest is in the discretion of the trial judge, this discretion must be 'exercised with a view to the right to interest unless the circumstances are exceptional.' ... The rationale for restricting discretion to exceptional cases is that ... prejudgment interest is an element of compensation and not a penalty." *Alkmeon Naviera, S.A. v. M/V Marina L*, 633 F.2d 789, 797 (9th Cir.1980) (internal citation omitted). The most common ground for denial of interest is unwarranted delay. *See id.; The President Madison*, 91 F.2d 835, 847 (1937); *see also American Zinc Co. v. Foster*, 441 F.2d 1100, 1101 (5th Cir.), *cert. denied*, 404 U.S. 855, 92 S.Ct. 99, 30 L.Ed.2d 95 (1971).

The record does not indicate that Stevens unreasonably delayed the prosecution of this action. As we have previously stated, it was not unreasonable for Stevens to withhold action against the SS Brooklyn and Wilmington while the *Bay Ridge* litigation was pending in New York. That litigation was concluded in September 1983. Stevens filed its notice of lien against the SS Brooklyn in December 1983. It commenced the present litigation in February 1986 approximately two years and two months later. The record also indicates that after Stevens filed its lien in December 1983, it made various attempts to arrest the SS Brooklyn, but due to the SS Brooklyn's size, this proved to be quite difficult. Under these circumstances the delay in

prosecuting this action was not unreasonable. This is not the exceptional case in which the right to prejudgment interest should be denied. *See Alkmeon Naviera*, 633 F.2d at 797.

Stevens contends it is entitled to prejudgment interest from the last date it furnished repair services to the SS Brooklyn, June 9, 1980; or, if we should not agree with this contention, then it argues it is entitled to prejudgment interest at least from the date it filed its lien, December 19, 1983. We conclude that an award of interest from December 19, 1983 is appropriate in this case. It was not until then that Stevens regarded the SS Brooklyn and Wilmington as its debtors with regard to the disputed $55,676.42 credit. Indeed, the first demand for payment from these appellants came when Stevens filed its lien. From that point forward it was the appellants who chose not to pay Stevens's demand, but to litigate instead. The demand was for the amount found due and owing, $67,524.42, and interest is payable on that amount by the appellants from December 19, 1983.

Stevens asks us to make the interest computation and award judgment to it for the appropriate amount. This task, however, is best left to the district court.

### CONCLUSION

We affirm the judgment of the trial court in favor of Stevens and against the SS Brooklyn and Wilmington in the sum of $67,524.42. We reverse the denial of prejudgment interest and award interest to Stevens, and against the SS Brooklyn and Wilmington from December 19, 1983. We remand this case to the district court for the computation of the appropriate amount of interest and for entry of judgment consistent with this opinion. Stevens shall recover its costs on appeal.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.