**UNITED STATES of America**

v.

**Dwayne OWENS, Keillen Smith, Kenneth Allen, Anthony Lewis, Gordon Lowe, Johnny Stephens, Robert Owens, Coleman Essex, Wayne Meadows, Fernando Owens.**

**Criminal No. 95–10397–WGY.**

United States District Court,
D. Massachusetts.

June 24, 1996.

78

Miriam Conrad, Boston, MA, for Dwayne Owens.

John M. Moscardelli, Boston, MA, for Keillen Smith.

Charles W. Rankin, Boston, MA, for Kenneth Allen.

James Joseph Coviello, Revere, MA, for Gordon Lowe.

Richard E. Bachman, East Bridgewater, MA, for Anthony Lewis.

John Salsberg, Boston, MA, for Johnny Stephens.

Bernard Grossberg, Boston, MA, for Robert Owens.

Michael J. Liston, Boston, MA, for Coleman Essex.

Michael C. Andrews, Boston, MA, for Wayne Meadows.

Michael C. Bourbeau, Boston, MA, for Fernando Owens.

Paul V. Kelly, Allison D. Burroughs, U.S. Atty's Office, Boston, MA, for U.S.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The failure to provide full disclosure of the government's case early in the proceedings limits a defendant's ability to investigate the background and character of government witnesses and the veracity of their testimony. For example, strict compliance with the Jencks Act necessitates frequent delays and adjournments. Counsel often need time to digest and investigate the information received. As a practical matter, any thorough investigation at that juncture of the proceedings may usually be impossible, and counsel must do the best that they can in the brief time usually allotted. The court and the jury are inconvenienced by even brief delays; the rights of the defendants are jeopardized because such delays, if granted, often are not sufficient. The restrictions, therefore, not only impinge upon the right of defendants to a fair trial, but also severely hamper the orderly process of criminal trials. They are wrong in principle and cause delay in practice.

Hon. H. Lee Sarokin & William E. Zukermann, *Presumed Innocent? Restrictions on Criminal Discovery in Federal Court Belie This Presumption*, 43 Rutgers L.Rev. 1089, 1090 (1991).

Perhaps no other trial-related statute is so disruptive of the "simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay" sought to be achieved by Rule 2 of the Federal Rules of Criminal Procedure as is the subject of this Court's present opinion, the Jencks Act, 18 U.S.C. § 3500. *See* 2 Wright & Miller, Federal Practice & Procedure: Criminal 2d § 438 (1982) ("[Rule 26.2, the procedural equivalent of the Jencks Act] is highly inconvenient, since it requires an interruption between the direct examination and the cross-examination in which a motion for production is made and fought over, and the documents produced read by the lawyer who has requested production.") (footnote omitted).

Since the Jencks Act is utterly impractical, it is routinely ignored. The common practice among the United States Attorneys for the District of Massachusetts over the last score of years has been to disclose Jencks Act materials voluntarily at the commencement of trial, if not before. *See id.* ("In practice ... the government frequently [gives] defense counsel access to the documents in advance of direct examination, and the courts

have repeatedly commended this practice.") (footnote omitted).

## I. BACKGROUND

Dwayne Owens and four other individuals [collectively referred to herein as the "Defendants"], were originally charged with one count of conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846 and one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).[1] The Defendants filed a Joint Motion for Discovery ("Joint Motion") on January 25, 1996 (Doc. No. 36). Paragraph 7 of the Joint Motion requested the early release of Jencks Act material "which defendants will be entitled to see pursuant to 18 U.S.C. § 3500 and Fed.R.Crim.P. 26.2." Joint Motion at 13. The Defendants also emphasized that their request "pertain[ed] only to Jencks Act material that is not exculpatory," contending that any exculpatory witness statements should be disclosed as part of automatic discovery required under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Local Rule 116.1(a)(5).[2] *Id.* As support for this latter contention, the Defendants cited and relied upon a recent case within this District which held that where there was a conflict between the Jencks Act and *Brady* concerning the timing of disclosure of exculpatory witness statements, constitutional protections afforded under *Brady* must prevail. *Id.* (citing

*United States v. Snell*, 899 F.Supp. 17, 21–23 [D.Mass.1995] [Gertner, J.] ). The Defendants also made reference to a bench ruling of this Court in an earlier, unrelated case where the Court ruled that it had the discretion to order early disclosure of prosecution witness statements on a "case management basis." *United States v. Houlihan*, Criminal No. 93–10291–WGY (D.Mass. hearing February 21, 1995) (Tr. at 261–264). In *Houlihan*, the Court specifically stated that, since the government agreed that the Court had such discretion, in order to obtain a litigation advantage therein, it was "judicially estopped from taking a different position *in another case.*" *Id.* (emphasis added).[3]

In response to the Defendants' request in the present case, the government agreed that it would "voluntarily provide Jencks Act material, to the extent available, at a reasonable time prior to trial, although this is clearly not required by statute or case law." Government's Response to Defendants' Joint Motion for Discovery ("Government's Response") at 7 (Doc. No. 38). The government did not specify whether it would distinguish between exculpatory and nonexculpatory Jencks material in making its disclosures. On February 16, 1996, in response to a Joint Motion for Discovery filed by the Defendants, this Court entered a margin Order expressly requiring the government to produce any material covered under the Jencks Act "30 days prior to trial." (Doc. No. 36) This apparent-

---

1. On May 14, 1996, the government returned a superseding indictment adding five defendants and charging them variously under 18 U.S.C. §§ 1962(c), (d) (Racketeering), 1952(c) (Interstate Travel in Aid of Racketeering), 1959(a) (Murder, Assault), 1958 (Murder for Hire), 846 (Conspiracy to Distribute Cocaine), 922(g) (Unlawful Possession of Firearms and Ammunition), 924(c) (Using and Carrying Firearms During Crimes of Violence), 1073 (Unlawful Flight to Avoid Prosecution), 1956 (Money Laundering), and 2 (Aiding and Abetting). The filing of the superseding indictment is not unexpected. Since the discovery dispute between the government and the original defendants remains the same although the scope of relevant material is now markedly broadened, it is appropriate to address these matters promptly at this juncture.

2. Local Rule 116.1 provides that in all criminal cases, certain material shall be automatically disclosed to the opposing party. Section 116.1(a)(5) deals with the general *Brady* obligation and re-

quires "[a]ll exculpatory evidence within the meaning of *Giles v. Maryland*, 386 U.S. 66 [87 S.Ct. 793, 17 L.Ed.2d 737] (1967), [*Brady*], and *Giglio v. United States*, 405 U.S. 150 [92 S.Ct. 763, 31 L.Ed.2d 104] (1972)" to be disclosed by the government.

3. Both *Snell* and the colloquy referred to in the *Houlihan* transcript dealt with the power of a district court judge to order the production of Jencks material before trial. In *Snell*, the defendant sought reconsideration of a Magistrate Judge's order barring the early disclosure of Jencks material based on statements by an Assistant U.S. Attorney in an unrelated case. In reaching her opinion, Judge Gertner relied upon this Court's ruling in *Houlihan* "as an indication of what others on this bench and in the United States Attorney's office take to be the law." *Snell*, 899 F.Supp. at 24. Judge Gertner later opined that although this Court's position in *Houlihan* did not "bind[ ] [her] either as a matter of precedent or of estoppel, it is significant." *Id.*

ly pushed the envelope too far for the government and, in a thorough and carefully considered brief, it here seeks reconsideration of this Order.

There are two parts to the government's motion. The crux of the Government's claim is that the Jencks Act, by its terms, prohibits compelled early disclosure of non-exculpatory witness statements. The second contention is that the government may not be judicially estopped from challenging the Court's Jencks order as a result of what transpired in *Houlihan*. Memorandum of Law in Support of Government's Motion for Reconsideration of Court's Order Requiring Production of Jencks Act Material "30 Days Prior to Trial" ("Government's Memorandum") (Doc. No. 48). Each argument will be considered *seriatim*.

## II. DISCUSSION

### A. *Jencks Act*

The Jencks Act provides, in relevant part, that:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena [sic], discovery, or inspection *until said witness has testified on direct examination in the trial of the case.*

18 U.S.C.A. § 3500(a) (West 1985) (emphasis added). Section 3500(b) of the Jencks Act states that the Court shall order the United States to produce any such statement upon motion made by the defendant and reaffirms the timing restriction mentioned in § 3500(a), namely that no statement ought be disclosed until "[a]fter a witness called by the United States has testified on direct examination." 18 U.S.C.A. § 3500(b) (West 1985). As noted above, this is neither fair nor practical, so courts have looked for a way around the congressionally mandated standard.

■ With respect to the statutory proscriptions upon the discretion of a district court judge under the Jencks Act, the overwhelming majority of cases—including cases from the First Circuit—adhere to a rule that is nearly absolute: district court judges may not, over the government's objection, compel pretrial disclosure of nonexculpatory Jencks Act material earlier than the close of a witness's testimony on direct examination. *See United States v. Grandmont*, 680 F.2d 867, 874 (1st Cir.1982) ("A court may not compel the disclosure of statements of government witnesses before the conclusion of their direct testimony."); *United States v. Neal*, 36 F.3d 1190, 1197 (1st Cir.1994); *see also United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir.1988) ("[T]he government may not be compelled to disclose Jencks Act material before trial." [citations omitted] ), *cited in United States v. Hart*, 760 F.Supp. 653, 657 (E.D.Mich.1991); *United States v. Molt*, 772 F.2d 366, 370 (7th Cir.1985), *cert. denied*, 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 715 (1986); *United States v. Percevault*, 490 F.2d 126, 129, 131 (2nd Cir.1974) ("[T]he district court did not have the statutory authority to compel disclosure [of Jencks material], over the government's objection, prior to trial."); *United States v. Exolon–Esk Co.*, No. 94–CR–17S, 1995 WL 46719, at *3 (W.D.N.Y. Sept. 10, 1995) ("[I]t is also uniformly recognized that a district court judge generally lacks authority to order pretrial production of Jencks materials over an objection by the government.").[4]

4. The Defendants claim that the government's view of the Jencks Act as foreclosing any required production of witness statements until a witness testifies on direct examination at trial is inconsistent with the Federal Rules of Criminal Procedure, since certain of the Federal Rules, as applied, require production of witness testimony "well in advance of trial." Opposition to Government's Motion for Reconsideration of Court's Order Re: Production of Jencks Act Material ("Defendant's Opposition") at 4 (Doc. No. 51). This alleged inconsistency warrants discussion. Rule 26.2 of the Federal Rules of Criminal Proce-

dure contains disclosure rules identical to those of the Jencks Act and applies them both to the prosecution and the defense alike. *See* Fed. R.Crim.P. 26.2 advisory committee's note, 1979 addition. Subsequent amendments to the Federal Rules have made Rule 26.2 applicable to witnesses at detention hearings, *see* Fed.R.Crim.P. 46(i)(1), and suppression hearings, *see* Fed. R.Crim.P. 12(i).

Thus no such contradiction exists between the Federal Rules of Criminal Procedure and the Jencks Act. The Jencks Act applies to "any crim-

Section 3500 acts, therefore, as a statutory limitation on the power of a district court judge to order the disclosure of nonexculpatory witness testimony prior to trial. *See United States v. Spagnuolo*, 515 F.2d 818, 821 (9th Cir.1975) ("Although district courts have wide latitude in ordering discovery in criminal cases ... we cannot tamper with statutory restrictions on their power."). It is a limitation so strict that district judges are forbidden from ordering early disclosure of Jencks material even where the government has engaged in questionable conduct. *See Exolon–Esk Co.*, 1995 WL 46719 at *1. While the government can disclose information earlier than the deadline imposed under section 3500, it does so voluntarily. *See United States v. Campagnuolo*, 592 F.2d 852, 859 n. 3 (5th Cir.1979) (calling the voluntary early production of Jencks materials "a salutary practice"); *see also United States v. Murphy*, 569 F.2d 771, 773 n. 5 (3rd Cir. 1978), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1588, 55 L.Ed.2d 807 (1978). Some circuit courts of appeal have adopted policies encouraging the government to disclose Jencks materials voluntarily prior to trial. *See, e.g., Spagnuolo*, 515 F.2d at 821; *Percevault*, 490 F.2d at 132.[5]

## B. *Judicial Estoppel*

Balked by ample precedent from compelling early disclosure of non-exculpatory Jencks Act materials, the Defendants claim the government ought here be judicially estopped from challenging this Court's order at all. The government argues that it ought not be judicially estopped. It maintains that 1) judicial estoppel cannot apply against the government in a criminal case as matter of law; 2) the government has not acted in a fashion so as to require relief in the form of judicial estoppel; and 3) the government has not gained any "unfair advantage" by agreeing to the Court's earlier exercise of discretion in *United States v. Houlihan, supra.* Government's Memorandum at 6–10.

■ Although the doctrine of judicial estoppel[6] is not acknowledged in all circuits and jurisdictions, it has been recognized for some time within both the First Circuit and the District of Massachusetts. *See, e.g., Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987) ("[The First Circuit] recognizes the doctrine."); *United States v. Levasseur*, 846 F.2d 786, 796 (1st Cir.1988) (appendix excerpting United States v. Levasseur, No. 86–180–Y, slip op. at 8–24 [D.Mass. Mar. 14, 1987]) and cases cited therein. As defined in this Circuit, judicial estoppel "precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another." *Patriot Cinemas*, 834 F.2d at 212. The primary concern of judicial estoppel "is to protect the integrity of the judicial

inal prosecution brought by the United States." 18 U.S.C.A. § 3500(a) (West 1985). Rule 26.2 applies to trials, probation revocation hearings, and sentencings in addition to detention and suppression hearings. Fed.R.Crim.P. 26.2(g). In extending Rule 26.2 to detention hearings and suppression hearings, the Advisory Committee wished to halt the practice of courts declining to extend the Jencks Act beyond the confines of actual trial testimony. *See* Fed.R.Crim.P. 26.2 advisory committee note, 1993 amendment. The dictates of the Jencks Act and Rule 26.2 are coextensive. Both state unequivocally that the *latest* time for disclosure of prior witness statements is *after* the close of the witnesses' direct testimony at trial. Any earlier disclosures in detention or suppression hearings pursuant to Fed.R.Crim.P. 46(i) and 12(i) respectively are not, therefore, logically inconsistent with the restrictions contained in the Jencks Act.

5. Dicta suggesting that a district court may **order** early disclosure of Jencks Act materials thus appears ill considered. *See, e.g., United States v.*

*Holmes*, 722 F.2d 37, 40 (4th Cir.1983) ("Many times, however, in cases where there are many statements or where the bulk of witness statements is large, the government will agree, **or it may even be ordered,** to deliver material at an earlier time so as to avoid lengthy delays before the beginning of cross-examination") (emphasis supplied). *See also United States v. Green*, 144 F.R.D. 631, 643–44 (W.D.N.Y.1992) (ordering Jencks materials to be disclosed 30 days prior to complex trial), *contra United States v. Reynolds*, No. 85 CR 812, 1986 WL 4089, at *3 (N.D.Ill. Mar. 19, 1986) (denying motion to produce Jencks documents 30 days before trial pursuant to 18 U.S.C. § 3500).

6. Judicial estoppel is also referred to as the doctrine of "preclusion of (or against) inconsistent positions." *Compare Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987) ("preclusion of inconsistent positions") *with United States v. Levasseur*, 846 F.2d 786, 796 n. 8 (1st Cir.1988) ("preclusion against inconsistent positions").

process," *Levasseur*, 846 F.2d at 792, and the First Circuit has stated that "judicial estoppel should be employed when a litigant· is 'playing fast and loose with the courts,' and when 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Patriot Cinemas*, 834 F.2d at 212 (quoting the guiding principles outlined by Judge Hastie in *Scarano v. Central· R. Co.*, 203 F.2d 510, 513 [3rd Cir.1953]).

■ Despite the rather liberal definition of judicial estoppel by the First Circuit in *Patriot Cinemas* and *Levasseur, supra,* there are at least three important limitations upon its application. As a threshold matter, the court must determine that the litigant against whom judicial estoppel is being asserted "made a bargain" with the tribunal of the first proceeding by making certain representations to the tribunal in order to obtain a particular "benefit" from the tribunal. *Levasseur*, 846 F.2d at 792–93; *see also Patriot Cinemas*, 834 F.2d at 213; *UNUM Corp. v. United States*, 886 F.Supp. 150, 158 (D.Me. 1995). Next, the inconsistent assertion in the subsequent litigation has to have been "adopted in some manner by the court in the prior litigation." *Total Waste Management Corp. v. Commercial Union Ins. Co.*, 857 F.Supp. 140, 153 (D.N.H.1994) (quoting *Stevens Technical Servs., Inc. v. SS Brooklyn*,

885 F.2d 584, 588 [9th Cir.1989]). *See also Wang Lab., Inc. v. Applied Computer Sciences, Inc.*, 958 F.2d 355, 358 (Fed.Cir.1992) (applying First Circuit law and concluding that, in order to invoke judicial estoppel, a party must demonstrate that the other party "obtained a litigation benefit" in prior proceedings). Finally, the First Circuit requires that there be an· indication of "deliberate dishonesty" or "serious prejudice to the judicial proceedings or the position of the opposing· party." *Desjardins v. Van Buren Community Hospital*, 37 F.3d 21, 23 (1st Cir. 1994).

■ The activity which gives rise to the potential application of judicial estoppel in the case at bar actually stems from a colloquy between the government, defense counsel, and this ·Court in the earlier *Houlihan* trial. · During the final phase of the government's case· in· chief, an assistant .United ·States Attorney ("AUSA") attempted to ascertain both "the names of those witnesses whom the defense ·planned to call" and "the statements of those witnesses ... under Fed. R.Crim.P. 26.2." (Doc. No. 50). After a brief discussion between the three parties about whether the Court had the authority to order early disclosure of Jencks Act material, the Court *sua sponte* raised the idea of "judicial estoppel."[7] Consistent with the AUSA's

---

7. The transcript of the entire conversation is as follows:

MR. EGBERT: Judge, I, I believe that· [Rule 26.2] says that they, that the statements [of the defense witnesses] ... come out after direct examination.

THE COURT: Of course they do. 'Don't you think it's within my discretion to require them to be produced at this time?

MR. EGBERT: I do not anymore than you can require the government to do it. I mean—

THE COURT: But I·can require the government to do it.

MR. EGBERT: Well, au contrare [sic], your Honor. You have, you have said over and over again that you cannot require the government to give Jencks material any earlier than the statute requires unless the government so agrees.

AUSA: The Court ordered it in this case, your Honor, ten days before the beginning of the trial.

THE COURT: That's true. That's true.

MR. EGBERT: No, no.

THE COURT: I have, and I do. I want one other thing—no, I do order it. As—

\* \* \* \* \* \*

MR. EGBERT: So, just so it's clear we're all—so the Court is ruling that you have the authority to require the government to produce Jencks Act material by order· of the Court prior to a witness testifying?

AUSA: Your Honor?

THE COURT: Yes.

MR. EGBERT: Okay. All right.

AUSA: Just so the record is clear, your Honor, the Court did so on a case management basis.

THE COURT: Yes.

AUSA: And ordered us to do so, I believe it was ten days ahead of time, effectively.

MR. EGBERT: And the government, I take it, agrees that the Court has that authority.

THE COURT: They certainly do, don't they?

AUSA: We have no objection to that at all.

MR. EGBERT: No, they agree that you have to do that, I assume.

THE COURT: They've pressed for it and so they are judicially estopped from taking a different position in another case.

request, defense counsel subsequently disclosed the names and statements of the witnesses pursuant to Rule 26.2..

Owens argues that the government, by claiming that judicial estoppel does not apply in this case, after acquiescing in this Court's holding in *Houlihan*, has attempted "to invoke the authority of one tribunal to override or flout a bargain made with another." Defendant's Opposition at 3 (quoting *Levasseur*, 846 F.2d at 793). While not adopting the precise language of Owens' counsel, this Court sees merit in this argument. In effect, the government pressed for a ruling in the *Houlihan* case that it now contends was outside the Court's authority. When the government wanted to obtain the benefit of the Court's early disclosure order in *Houlihan*, the government agreed that the Court had the authority to order pretrial disclosure of Jencks material on a case management basis. Now, however, where the shoe is on the other foot and the government will, in its view, be substantially burdened by such an order, it seeks to marshal every argument against the Court's making substantially the same order.

There is something inherently unfair about this tactic. Writing over a hundred years ago, the Supreme Court agreed, and opined that

> where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position.

*Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895), *quoted in Total Waste Management Corp.*, 857 F.Supp. at 153. In addition, this Court has previously held that "the concept of judicial estoppel comes into play only where the government has obtained some advantage through its original position." *United States v. Houlihan*, 887 F.Supp. 352, 366 (D.Mass.1995) (citations omitted). The First Circuit, however, has observed that "this obscure doctrine [of judicial estoppel] has never been applied against the government in a criminal proceeding," *United States v. Kattar*, 840 F.2d 118, 130 n. 7 (1st Cir.1988), and has reserved judgment on this issue in *Kattar, id.*, and *Levasseur*, 846 F.2d at 793 n. 7. Thus, even though it certainly appears to be the case here that the government will be advantaged by delaying disclosure of the Jencks material as long as possible, it is not altogether clear whether judicial estoppel would—or should—apply.

■ It is generally held that, no matter how egregious the conduct of agents of the executive branch of government, that conduct will not estop the government itself from asserting rights conferred by statutes duly enacted by the Congress, the legislative branch. *E.g.*, *Heckler v. Community Health Services*, 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984); *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Utah Power & Light Co. v. United States*, 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917); *Lee v. Munroe*, 7 Cranch 366, 368–70, 3 L.Ed. 373 (1813). To hold otherwise would be to undermine the necessary separation of powers of each branch of government and the checks and balances thereon. In short, if executive action or inaction could estop the application of a statute, the laws of Congress could be set at naught. This principle is applied with especial vigor in the First Circuit. *Federal Deposit Ins. Corp. v. Roldan Fonseca*, 795 F.2d 1102, 1107–08 (1st Cir.1986); *Phelps v. Federal Emergency Management Agency*, 785 F.2d 13, 17–17 (1st Cir.1986). So it is here. Whatever its manifest flaws, Congress enacted the Jencks Act and this Court must observe its limitations. While the doctrine of judicial estoppel may well apply to litigants in criminal cases as indicated by this Court's *dicta* in *United States v. Houlihan*, 887 F.Supp. 352, 366 (D.Mass.1995) (suggesting that the Defendants may be estopped from objecting to admission of evidence by waiver of objections under some circumstances),[8] the

MR. EGBERT: And that's the office of the United States Attorney.
THE COURT: Absolutely.
*Houlihan*, Transcript of February 21, 1995 at 262–64.

8. Indeed, this Court so held in a handwritten margin order on this precise point in *United States v. Di–Bartolomeo*, Crim. No. 95–10239–WGY (D.Mass. Dec. 29, 1995). The further reflection and discipline of preparing this written

Court holds that the doctrine cannot be invoked against the government so as to estop it from arguing that a statute must be applied in accordance with its terms.[9]

It appears, therefore, that this Court's February 16, 1996 margin Order was impermissibly broad insofar as it required the production of non-exculpatory Jencks act material and that, as it is in conflict with the statutory mandate, it cannot stand. That aspect of the Order is vacated. Exculpatory Jencks Act material, however, is a horse of another color, quite different indeed.

## C. *Exculpatory Jencks Act Materials*

■ Despite the strictures of section 3500, a thorough reading of applicable case law indicates that a district judge has authority to order disclosure of **exculpatory** witness testimony before trial.

When a witness who is testifying for the prosecution has made prior statements which are exculpatory in nature, it appears that a district court judge may order the pre-trial disclosure of such material if it is required to be disclosed under *Brady* notwithstanding the fact that it is subject to the timing restrictions imposed under the Jencks Act. *See United States v. Gallo*, 654 F.Supp. 463, 474 (E.D.N.Y.1987) ("If witness' [sic] statements contain material exculpatory to the defendant, due process requires pretrial production under *Brady* despite the fact that it may be *Jencks* material as well." [citations omitted] ).

Unlike the precedents iterating the near-absolute prohibition discussed above, the law concerning exculpatory statements under the Jencks Act is far from clear. The Third Circuit has held that even if a clash between *Brady* and Jencks exists, there is no unconstitutional denial of due process "if *Brady* material is disclosed in time for its effective use at trial." *United States v. Starusko*, 729 F.2d 256, 262 (3rd Cir.1984); *quoting United States v. Higgs*, 713 F.2d 39, 44 (3rd Cir.

1983), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 725, 79 L.Ed.2d 185 (1984). Other courts outside the Third Circuit have concurred with the holding in *Starusko*. *See, e.g., United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir.1988); *United States v. Hart*, 760 F.Supp. 653, 659 (E.D.Mich.1991) (holding that where the requested information is covered under both *Brady* and the Jencks Act, the government need not disclose the same until the conclusion of direct examination).

Although the First Circuit has not explicitly addressed the matter, Judge Gertner, in her seminal decision in *Snell*, confronted this issue head-on and held that, where the evidence at issue was conceded to be exculpatory material required to be disclosed under *Brady*, that material was to be turned over immediately pursuant to Local Rule 116.1, even though it was protected by the Jencks Act. *Snell*, 899 F.Supp. at 19. This Court agrees, considering that *Snell* stated the proper rule in this district. Where a defendant's constitutional due process rights under *Brady* clash with the procedural dictates of the Jencks Act, the rights afforded to the defendant must prevail. *See United States v. Narciso*, 446 F.Supp. 252, 271 (E.D.Mich. 1977) ("[W]hen two principles of law conflict with one another ... the principle favoring greater discovery in favor of the accused must prevail, particularly where ... the principle favoring disclosure is of constitutional origin."); *see also Starusko*, 729 F.2d at 262–65 (indicating that the *Brady* doctrine may require the pre-trial disclosure of Jencks Act material that is truly exculpatory of the charge against the defendant); *United States v. Ruiz*, 702 F.Supp. 1066, 1069 (S.D.N.Y. 1989) (recognizing that "[i]t is conceivable that disclosure of material covered by the Jencks Act may be required, under *Brady* and the due process clause, to be made to the defendant before trial in order that the defendant might prepare and present an effective defense."). Given the important nature of the constitutional rights at stake, this

opinion, however, leads me now to conclude that the actual application of judicial estoppel in those circumstances was error.

**9.** It thus appears upon reflection that this Court's *ore tenus* ruling in *Houlihan* was likewise in

error and that the government there gained an "unfair advantage" by successfully compelling the defense to make early disclosure of defense Jencks Act materials. The Court will not make this same mistake again.

Court rules that the *Brady* requirement must effectively trump the Jencks Act where the two are in direct conflict.

### D. *What is exculpatory?*

While this opinion addresses and resolves the issues presented, it says little that is new. In sum, it boils down to the following three propositions: 1) the Jencks Act means what it says, and 2) the doctrine of judicial estoppel can never trump the provisions of the Jencks Act, but 3) the requirements of *Brady* do trump that Act's strictures. This is enough to frame an order that 1) encourages early disclosure of non-exculpatory materials but permits the government to withhold such non-exculpatory Jencks Act witness statements until the final moment when that Act requires disclosure **but also** 2) requires disclosure of exculpatory material forthwith.

▇▇▇▇ If matters are left in this posture, however, the Court is concerned that no genuine resolution of the underlying criminal discovery dispute may be achieved. This is so because the concept of "exculpatory evidence" is elastic and the government appears to consider that it is duty bound under *Brady* and its progeny only to disclose material tending to show that a defendant is innocent of the crime charged. This is far too restrictive an approach. The Supreme Court in *Kyles v. Whitley*, —— U.S. ——, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) has emphasized that any evidence that has a "reasonable probability" of altering a jury's verdict in favor of the defendant must be disclosed under *Brady*. *Id.* at ——, 115 S.Ct. at 1566. This Court had previously analyzed the question in *United States v. Keliher*, Crim. No. 90–102690–Y, order from the bench (Transcript of October 21, 1991) at 78–105. Unfortunately, since the Court never found time to publish the decision in *Keliher*—and since the government dislikes it—it is routinely ignored. To remedy that flaw, the Court here reiterates its *Keliher* analysis in full (with some modest rearrangement, grammatical corrections, and elisions):

> Under *Brady*, ... standing alone, the law used to be that the government's con-

stitutionally mandated due process obligation to reveal exculpatory data was data that tended to show that the defendant either did not commit the crime charged, that ... was inconsistent with the defendants having committed the crime charged, or [that] tended to establish a defense to the crime charged, self defense would be a perfect example....

There followed after *Brady* the trilogy of cases, *Giglio*, *Bagley* and *Ingraldi*, which I will state I have always read as largely being confined to their facts or to the factual scenario that was [there] set out.[10] *Giglio v. United States*, 405 U.S. 150 [92 S.Ct. 763, 31 L.Ed.2d 104] (1972); *United States v. Bagley*, 473 U.S. 667 [105 S.Ct. 3375, 87 L.Ed.2d 481] (1985); *United States v. Ingraldi*, 793 F.2d 408 (1st [Cir.] 1986). I joined this court with that approach, recognizing that there were certain circumstances in those three cases ... where it was the obligation of the government to disclose impeaching-type material....

I think I was supported in this view by a consideration of the local rules of court, rules which are promulgated by the judges of this Court [where], it will be recalled for those who follow these matters, that when local rules ... dealing with criminal procedure were presented to the judges of this court, the original draft out of the Court's rules committee required as automatic discovery all impeaching material. The Court voted that down.... I'll speak only to what's in the public record, a majority of the judges did not include that as an automatic [discovery] obligation of the United States Attorney.

I am compelled to the conclusion now that this restrictive approach to the government's duty is no longer permissible, and I'm led to that conclusion by the *Devin* case and the *Osorio* case. *United States v. Devin*, 918 F.2d 280 (1st Cir.1990); *United States v. Osorio*, 929 F.2d 753 (1st Cir. 1991). *Devin*, perhaps, could be dismissed as *dicta*, but *Osorio* clearly cannot.... Both of those cases speak broadly—the

---

**10.** This Court's 1991 view of *Bagley* must be revised in light of the Supreme Court's much broader reading of that case. *See Kyles*, —— U.S. at ——, 115 S.Ct. at 1565–68.

*Devin* case talking about the requirement that impeachment information is to be disclosed, and the *Osorio* case talking about an impeachable defendant. Neither one of those cases put any limit on impeaching material....

If we're going to use the language ... the First Circuit is using ... unmistakably in these recent cases, ... it is the duty of the government to disclose impeaching material ... and I think ... what can be considered impeaching material is ... quite broad.

These recent decisions of the First Circuit make the government's obligation to disclose under the line of cases beginning with *Brady*, going through *Giglio, Bagley* and *Ingraldi* and in the First Circuit under *Devin* and *Osorio*, coincident with the scope of cross-examination.

I have to say, and I say it with the utmost respect, I'm not sure the First Circuit has explored the implications of such broad language. I continue to think that the three Supreme Court cases cited do not themselves mandate such a sweeping rule but, under the provisions of *stare decisis*, I am bound to follow First Circuit law until the First Circuit either explicates it further or suggests that not all impeaching material need be disclosed.

I set forth that hesitancy on my part because I remain skeptical and ... because ... I want to develop it in a written opinion so others may criticize it and cite it and we find the limits. I'm going to try to tick off just what I think is required [to be produced] by the cases as precisely as I know how.

Now, my list is not exhaustive. Competent ... defense counsel may well suggest other things in specific cases. My principle is that, after these two First Circuit cases, the government's duty of disclosure is coincident with the scope of cross-examination to be afforded in a criminal case.

There is one limitation that I will follow until instructed otherwise and that is, while the government certainly has a duty to search the files of the executive, the government is not ... required to obtain documents which are not within its possession.

There are two types of documents that most frequently come up. First, under this obligation as I am trying to explicate it, I don't think the government is obligated to search through the files ... of the various states, either of their law enforcement or of their judicial systems. Second, coincident with the separation of power[s], I don't think the government in the person of the executive and the United States Attorney is required to produce documents held by the other two branches of government—the legislative would be vary rare but the judicial is frequently at issue. So it seems to me things like probation reports, plea colloquies, and the like [are exempt]. Of course, if the government has possession of them in the office of some other United States Attorney or the like, then they can be required [to] and must turn them over. But I don't think they have to go to court reporters in other districts and require transcripts to be made and the like.

The government has to [search for] all evidence in whatever form it takes—this business about statements of the witness [or] ratified by the witness, the Jencks Act, is much too narrow. When I say they have to [search for] documents of [all sorts], I mean they have to [search for] notes, if notes exist, they have to [search for] such internal government documents [as may exist] by whatever government agency. I think the government should be viewed as a unitary whole. [The obligation to search] governs all the offices of the United States Attorney and the Justice Department itself, it governs the Bureau of Prisons, the customs agencies.... Arguably it may include the United States Marshal's office, as they are a bridge between the Justice Department and the courts. Obviously [it] includes the DEA, the FBI, agencies funded out of the Justice Department, [and all other governmental agencies including state officers acting as agents of the federal government].

Now, with that explanation and limitation, here are some of the things that it

seems to me the government has to produce:

All documents which tend to show the bias, prejudice, personal interest of any government witness to testify in favor of the government or against any defendant, and any documents which tend to show a special relationship of the witness or hostility of the witness either to any other government witness or to any of the defendants in a trial. That means, it seems to me, that within the scope of the statute of limitations all prior bad acts must be disclosed and if we're dealing with a witness who has received either immunity or any sort of promise, inducement, or reward, the prior bad acts which must be revealed must be within the scope of the statute of limitations read backwards from the time the witness received the promise, inducement, or reward.

Those prior bad acts are limited—have in mind my general approach—are limited to those acts which are offenses against the law, either against federal law or against the laws of any state in which the acts were committed and could be prosecuted. It is not necessary that they have resulted in prior convictions or arrests, but simply that the acts were committed and the witness may be biased to testify in favor of the government to avoid prosecution by either state or federal government for the misconduct.

Second, the government must produce any data that it has with respect to the testimonial faculties of any witness. That witness' ability to observe, remember, or relate coming to this case. That means the government must produce any psychiatric data that it has which bears on the witness' ability to observe the conduct about which the witness is going to testify, or the witness' ability to remember or relate such conduct at the time when the witness comes on to testify.

. . . .

The government is obliged within the limits I've sketched out about what's in their possession and . . . including all the different types of data, they are obliged to produce any evidence, extrinsic evidence, that tends to contradict any government witness about anything the government reasonably expects the witness will be inquired of on direct examination.

Now, understand, I'm taking the most restrictive formulation first. I have some suggestions that go beyond it, but this is what I think that *Devin* and *Osorio* require. So, any evidence that contradicts any government witness with respect to anything that witness is going to be inquired of on direct has to be disclosed.

Likewise, the government must reveal any self-contradiction of the witness by any prior inconsistent statement or act prior to trial. And again, the self-contradiction, taking the narrowest formulation first, is self-contradiction with respect to anything that . . . is expected to be elicited from the government witness on direct examination.

The government is required to reveal any evidence that it has of prior bad acts which go to the reputation of the witness for truth or veracity or any specific acts which point to the witness having lied on other occasions. Now, understand, that's a prior bad act different from the prior bad acts which violate the law. This is [the obligation to] provide bad acts of lying or failing to tell the truth. Those things would have to be revealed.

. . . .

Let me add two additional matters which should be included. The government has to reveal all promises, rewards, and inducements to include the *quid* for the *quo*. And if that quid pro quo involves other sovereigns, of course that must be revealed.

. . . .

Obviously prior convictions that would be admissible under Federal Rule of Evidence 609 must be revealed whatever the sovereign, state or federal, because if they could be used by the defense against a government witness, it is no excuse that it is a prior conviction in a state court because 609 would make it admissible and, under *Devin* and *Osorio*, the government now has to produce it.

... If you have a situation where there is a deal at any stage in the history of the witness, then a prior conviction which figured in that deal, ... that has to be revealed. And indeed, if there is a deal, a plea bargain or whatever, all bad acts in the violation of the law sense would have to be revealed so long as they're within the statute of limitations, because those are things that the person might fear that he'd be prosecuted for if he were not to play ball with the government.

MR. EGBERT: So then as to a person who has made a deal, as I understand it, all criminal acts charged or uncharged, during [a] prosecutable [period], when known ..., basically, is one set.

THE COURT: Right.

MR. EGBERT: All 609 convictions which can be used in court to impeach is a second set?

THE COURT: Correct.

MR. EGBERT: And all other convictions which may be [factored] into any sentencing process at any time is a third set.

THE COURT: Right, correct. Convictions, though.

. . . .

Here is [an] example. I just sentenced a person to 15 years under the Armed Career Criminal Act. One of the prior crimes of violence was 17 years old. Now, under 609, that's not admissible, it's too long [ago], ... beyond the ten years in 609. At the trial, none of those could have been used to impeach him. But Congress has said that those predicate violent crimes are the grounds on which to [enhance his sentence].... If someone comes up, makes a deal with the government, all their prior convictions are the things that judges look at. So you've got someone who has cut a deal—I don't mean that pejoratively, but if he's plea bargained or gotten some sort of deal with the government—all their prior convictions, no matter how old, are producible convictions now because, reasonably, that would be in the contemplation of the person when they made the deal, that's part of the value of the deal to that person, and impeachable.

[.... The same duty obtains whether there's an] immunization or plea, as far as I'm concerned, because the *quid,* you can force it, entirely your choice, a person doesn't want to testify, you take away their Fifth Amendment privilege by giving them immunity, but the value to them, it seems to me, [includes all prior convictions however old] because ... a judge is going to take all this into account [were the person to be sentenced after indictment and] you've got to disclose it because it's arguably [impeaching].

.... Since ... the obligation is coincident with the scope of cross, ... there has to be a constant review of all the data about the witness as the trial goes on.... [By the time] a witness is done his direct, the government will have produced all the things I've mentioned.... It may be [, however, that] the careful preparation of the defense may reveal other areas which it is appropriate to inquire into on cross. Then the government, on an ongoing basis, has to review its entire material about that witness to make further disclosure of anything that fits within any of the aforementioned categories that are revealed to be inconsistent on cross as to other conduct in other events and the like.

. . . .

This [document review] has got to be carried out by an Assistant United States Attorney. I have great respect for paralegals and I certainly have enormous respect for the agents and case agents, but I think a lawyer, an officer of this Court, has got to carry ... out [that document review] and be in a position to know whether the material now on cross-examination is in any respect inconsistent with anything the government has, and if inconsistent or if it fits any of those other categories, it has to be revealed.

. . . .

One other general comment. This business about ongoing review of matters, if the government is not going to have an open file policy and is instead going to undertake this ongoing review, once it is clear ... with respect to these impeaching

materials what the government's obligation is, the government can't expect the Court, this Court—I'll speak just for myself—to be sympathetic to any delays in making this review. The government simply has to staff its cases, if they're not going to have an open file policy, with sufficient Assistant United States Attorneys so that, daily, someone is making this review.

Now, whether they do it by putting everything on litigation support, computer indices, I leave that to the government. But I at least don't intend to be sympathetic to discovery that I've required to be made which is not made because the government has chosen to wait to see the scope of cross-examination.

. . . .

I think with respect to—we'll take alcoholism, psychosis, drug addiction, other things which impair the faculties and your ability either to know what's going on around you or accurately to giver testimony about it. Those types of impairments, if they existed during the time that the testimony is sought to be elicited concerning, or if they exist now, are discoverable. I don't think—but again, other judges may think differently about this—that the simple fact that sometime in the past a person was an alcoholic and is therefore, thereafter, a recovering alcoholic, or that the person had a drug addiction or that the person suffered some nervous or mental impairment, necessarily is discoverable nor do I think it's necessarily ... the subject of testimony at trial.

The last time I had to visit this was in that Butt and Semon case, [*United States v. Butt*, 753 F.Supp. 44 (D.Mass.1990) ] and my thoughts, not reduced to an opinion—not that they're the right thoughts but they probably should have been [expressed in an opinion] so that it would be easier for you to play off it—are that we ought not get into shading over into what is, in effect,

just character testimony which is forbidden by 404(a) because sometime in the past a witness had those impairments. But [if] those impairments go to something either at the time of the conduct observed about which the witness is going to testify, or the witness' capacity at the time of trial, they're both discoverable.

*United States v. Keliher*, Crim. No. 90–10269–Y, order from the bench (Transcript of October 21, 1995) at 78–105.

■ Two final thoughts—first, it is readily apparent that making the disclosures ordered above necessarily requires the government in virtually every case promptly to reveal who many, if not all, of its witnesses will be. After all, just as soon as the government chooses to use a particular witness at trial, **at that moment** the duty to disclose all the potentially impeaching material limned above arises.[11] The government can have no legitimate objection to such witness disclosure since the Attorney General herself recognizes that "[u]pon a proper showing of materiality and need, Federal trial courts may order pretrial disclosure of the Government's prospective witnesses." Letter of September 11, 1995, from Attorney General Janet Reno to Chief Justice William R. Rehnquist (arguing against the need to amend Fed.R.Crim.P. 16 expressly to provide for the exercise of this authority). In this circuit, the dictates of *Devin* and *Osorio* demonstrate such "materiality and need."

■ Second, in this District much time is wasted framing and responding to boilerplate discovery motions in criminal cases. Through this opinion, this Court puts the Office of the United States Attorney for the District of Massachusetts on notice that it must, in every criminal case in this session, make the disclosures called for herein without the need for any motion by defense counsel. On the other hand, this Court will not entertain any motion for discovery by a crim-

---

11. There is the risk here that the government may try to make an end run around its disclosure obligations by dragging its feet in witness selection. Such obfuscation is not to be tolerated and will receive short shrift in this session. By seeking an indictment, the government represents in good faith that it can make out a *prima facie* case

as to each crime charged. This means that at **that time** it has witnesses and exhibits in hand. Consequently, the government must make its disclosures as part of the automatic disclosure process required by the local Rules. *See* Local Rule 116.1(a)(5).

inal defendant that 1) has not first been the subject of an oral conference with the relevant Assistant United States Attorney, and 2) is not accompanied by a) a certificate that such conference has occurred and b) an explanation why this opinion does not settle the issue.

This notice shall stand as a special order of this Court until altered or amended by the Court or by amendment of the Local Rules by the full District Court of Massachusetts. Failure to comply will be treated as a violation of court order.

### III. CONCLUSION

For the above reasons, the government's motion for reconsideration of the Court's order is hereby **GRANTED.** Nonexculpatory witness statements covered under the Jencks Act are to be produced in accordance with its terms, though the Court strongly encourages earlier disclosure. All exculpatory materials as defined herein are to be produced forthwith. This opinion shall constitute a standing order of this session of the court.

SO ORDERED.